RAYMOND M. PONDELICK, PROSECUTOR, v. COUNTY OF PASSAIC AND FRANK DAVENPORT, SHERIFF OF PASSAIC COUNTY, RESPONDENTS.

Argued April 1, 1933—Decided August 18, 1933.

188

Before Justice HEHER, pursuant to the statute.

For the prosecutor, *Nicholas O. Beery.*

For the respondents, *William R. Rogers.*

The opinion was delivered by

HEHER, J. On August 31st, 1927, the prosecutor was duly appointed to the position of court attendant of the county of Passaic, under the provisions of the Civil Service act. 3 *Comp. Stat., ch.* 176, *p.* 3795, of the laws of 1930 (*Pamph. L.* 1930, *p.* 606). He served in that capacity until January 31st, 1933, when he was notified by the sheriff that, because of a curtailment of the departmental appropriation, he was compelled to reduce the staff of court attendants, and that his services "will no longer be required after January 31st, 1933." Two days later the sheriff, presumably to make definite the prosecutor's status, advised him by letter that, for the reason stated in the prior notice, his services were "temporarily dispensed with." The facts are stipulated. Prosecutor served in the overseas army of the United States during the world war, and was honorably discharged. When the action complained of was taken, the staff of court attendants consisted of twenty-one persons (eighteen males and three females), all of whom were entitled to the protection afforded by the Civil Service law. Eight of those retained did not have the status of war veterans, but their appointments antedated that of prosecutor.

The sheriff is not charged with bad faith. That he acted in the performance of what he conceived to be a public duty is beyond question. There was a reduction of $52,678 in the departmental appropriation for the year 1933, as compared

with the prior year, and he was confronted with the necessity of reducing the force under his control in order to bring the operating cost within the budget allowance.

Prosecutor does not contend that he has been deprived of any right conferred by the Civil Service law. Apparently, the provisions of that act relating to the separation of employes "from service for a limited time, for reasons of economy," and "order of lay-off when forces must be reduced because of lack of funds or work," were not disregarded. *Pamph. L.* 1918, *p.* 776; *Pamph. L.* 1930, *pp.* 606, 623.

It is insisted, however, that the action taken by the sheriff contravenes the provisions of paragraph 3 of chapter 14 of the laws of 1907 (*Pamph. L.* 1907, *p.* 37), prohibiting the abolition of a position or office held by an honorably discharged war veteran. The argument seems to be that, under this section, it became the sheriff's duty, in determining the positions to be abolished, to retain those within the favored class created by this statute, in preference to those who were not.

But it is clear that the prosecutor's position was not "abolished" in the sense that the term was employed by the legislature. It has been held in another jurisdiction that "laying off or suspension for lack of work or lack of appropriation, no one else being appointed to fill the position, is in effect abolishing the position, and not a removal." *Reilly* v. *Smith,* 156 *N. Y. Supp.* 686. The question, however, is one of statutory construction. It is an established rule in the exposition of statutes that the intention of the legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. The meaning of general words must be restricted whenever it is found necessary to carry out the legislative intention. The reason and spirit of the statute controls in its interpretation. *Lynch* v. *City of Long Branch,* 111 *N. J. L.* 148. The several provisions of the statute should be construed together in the light of the general purpose and object of the act, so as to give effect to the main intent and purpose

of the legislature as therein expressed. A statute must receive such construction as will make all its parts harmonize with each other, and render them consistent with its general scope and object. The object and policy of a statute should be resorted to in aid of interpretation. This court recently held that the evident intent of the legislature was to protect those comprising the favored class from removal "except for good cause shown after a fair and impartial hearing," and that section 3 was intended to prevent, by indirection, the thwarting of that legislative purpose. *May* v. *Board of Commissioners of the Town of Nutley,* 111 *N. J. L.* 166; *Nickerson* v. *Board of Commissioners of Wildwood,* 111 *Id.* 169; *Maxwell* v. *Board of Commissioners of Widlwood,* 111 *Id.* 181.

The verb "abolish" imports absolute destruction. It has its root in the Latin word *abolere,* meaning "to utterly destroy." It is defined thus: "to extinguish, abrogate, or annihilate a thing." Bouvier's Law Dictionary. "To do away with wholly; to annul; to make void; to put an end to or destroy as a physical object; to wipe out." "Abolish" applies particularly to things of a permanent nature, such as institutions, usages, customs; as the abolition of slavery." Webster's New International Dictionary.

It follows, therefore, that the action of the sheriff in temporarily dispensing with the services of the prosecutor was not an abolition of his position within the intendment of the statute. Abolition was manifestly not intended. It was not determined that the position was unnecessary. The action complained of was merely a lay-off "because of lack of funds."

Moreover, a subsequent enactment of the legislature clearly evinces a legislative purpose to limit the preference claimed by prosecutor to war veterans who have a record of disability incurred in the line of duty in the late war between the United States and the German Empire, and its allies. Chapter 52 of the laws of 1922 (*Pamph. L.* 1922, *p.* 98), as amended by chapter 349 of the laws of 1929 (*Pamph. L.* 1929, *p.* 784), ordains that if from considerations of economy, or for the purpose of promoting the efficiency of

the public service, positions held by state or municipal employes shall be abolished, preference shall be given to those having that status. But this provision is not found in either chapter 14 of the laws of 1907, as amended by chapter 29 of the laws of 1929 (*Pamph. L.* 1929, *p.* 57), chapter 125 of the laws of 1919 (*Pamph. L.* 1919, *p.* 290), granting to honorably discharged war veterans, without regard to the conflict in which the service was rendered, preference in appointment, employment and promotion, and protecting them against removal except for incompetency and misconduct, or in any other enactment.

The New York Court of Appeals construed a provision that war veterans shall be preferred for "appointment, employment and promotion" as conferring a right to a preference when a reduction of positions has become necessary. Mr. Justice Cardozo, following the rule laid down in *Stutzbach* v. *Coler,* 168 *N. Y.* 416; 61 *N. E. Rep.* 697, said that "the determining consideration has been that, to make the preference as to appointment effective, it must be held to be a continuing one during the entire term of service." *People* v. *Williams,.* 213 *N. Y.* 130; 107 *N. E. Rep.* 49. I cannot subscribe to this view. The question, in the final analysis, is one of interpretation, and it may well be that the legislature, in granting a preference as to appointment and promotion, intended to withhold a right of preference when a reduction of positions became necessary. This would undoubtedly be the case if it entertained the view of Judge Gray, expressed in *Matter of Breckenridge,* 160 *N. Y.* 103, 108; 54 *N. E. Rep.* 670, 672, and quoted with approval by Mr. Justice Cardozo in the cited case, that we should not impute to the legislature "the injustice of intending that some faithful and, possibly, more efficient officer, who happens not to be a veteran, must be discharged to make room for the incumbent of the abolished office."

The injustice would be even more pronounced, and the impairment of the public service might, quite conceivably, be the greater, where one who had devoted the fruitful years of his life to the mastery of a particular field of public ser-

vice, to the exclusion of all else, and, ripened by the knowledge, training and experience thereby gained, had become well nigh indispensable, if the desired state of efficiency in departmental management were to be maintained, was discharged to make way for a veteran whose comparatively short period of service did not give him the knowledge and skill requisite for the maintenance of the standards of public service which had theretofore obtained. And, to go a step further, the practical operation of this policy would undoubtedly result, in times of economic stress such as now confronts the nation, in the discharge of all experienced employes of the same rank in a given department of the public service, to make places for inexperienced new-comers of the preferred class. Such an intention cannot be imputed to the legislature in the absence of clear and unmistakable language evincing that purpose. The public need is, or should be, of paramount concern always. It is not to be presumed that the legislature intended, by an absolute rule of this character, to compel a course that would, on some occasions, no matter how few, thus disadvantage the public service. On the contrary, it sought in a measure to guard against this very thing in the statute of 1922, granting such preference to disabled world war veterans, by the proviso that those accorded the preference "shall possess the business capacity necessary to discharge the duties" of the position.

A legislative purpose to enlarge the class to be benefited must be expressed in unequivocal language. The class favored by the act will not be extended by implication. *May* v. *Board of Commissioners of the Town of Nutley, supra.* And it is a corollary of this that the scope and character of the protection afforded, and the preference given, will not be enlarged by implication. To establish the right to such a preference, the claimant must be able to put his finger upon the precise provision of the statute which confers it. This the prosecutor cannot do.

The act of 1922, limiting this preference to disabled veterans of the world war, makes clear the legislative scheme. It necessarily limits the scope and effect of the other statutes

relating to the same subject. The affirmative enumeration of those who shall have the preference, in event of the reduction of positions, implies the negative as to all not within the designated class. That the legislature has recognized this as a proper subject for affirmative action and provision, is made clear by the provisions of the Civil Service act heretofore adverted to. *Pamph. L.* 1918, *p.* 776; *Pamph. L.* 1930, *pp.* 606, 623. These acts require service ratings, and the keeping of efficiency records. The act of 1918 provides, *inter alia,* that "whenever it is sought to abolish any positions, or to separate any employes from service for a limited time, for reasons of economy, the position of the person or persons shown to be the least efficient, * * * in the class and grade in which the reduction of the force is to be made, shall be abolished," and that "when the efficiency record shall show no difference in the relative efficiency of the employes, the position of those most recently appointed shall be the first to be abolished." The act of 1930 provides, *inter alia,* that the service ratings therein provided for shall be used "in determining order of lay-off when forces must be reduced because of lack of funds or work," and that "when service ratings are used as a basis for determining the order of lay-off, seniority credits not to exceed ten points may be added to the ratings of the employes affected, based upon their length of service * * *."

Statutes *in pari materia* are to be construed together as forming one act. If in a subsequent clause of the same act provisions are introduced which show the sense in which the legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated in the foregoing act, is a direction to courts in expounding the provisions of the law. *Alexander* v. *Alexandria,* 5 *Cranch* 1; 3 *U. S. (L. Ed.)* 19. This rule is apposite here, and limits the scope and effect of the provision of chapter 125 of the laws of 1919, granting

preference for appointment, employment and promotion. In any event, the subsequent acts clearly express a legislative intent and policy to limit the preference, in the event of a reduction of positions, to disabled veterans having the status prescribed by chapter 52 of the laws of 1922, as amended. The result, therefore, is that, in the action complained of, prosecutor was not deprived of any right accorded to him by law. The writ will consequently be dismissed.

Writ dismissed, but without costs.