THE CITY OF NEWARK, A MUNICIPAL CORPORATION, AND MICHAEL P. DUFFY, DIRECTOR OF THE DEPARTMENT OF PUBLIC SAFETY, PROSECUTORS, v. CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY AND JOSEPH J. CAVANAUGH, RESPONDENTS.

Submitted October 12, 1934—Decided March 28, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutors, *Frank A. Boettner* and *Thomas M. Kane.*

For the respondents, *Charles Handler.*

The opinion of the court was delivered by

HEHER, J.   On September 11th, 1932, respondent Cavanaugh, a patrolman in the uniformed police department of the city of Newark, appointed on December 16th, 1931, entered a public cafe or saloon located in that municipality, and conducted by one Edward McCaffrey.   He was "off duty."   His purpose, so he said, was to obtain a box of candy won in a raffle or drawing conducted on the saloon premises.   He tarried, however, with tragic results.   Herbert McCaffrey,

a brother of the proprietor and an old friend of Cavanaugh, was there. They indulged in some good natured raillery, in the course of which Herbert asked Cavanaugh to "have a drink." The latter insists that he was sober when he entered the premises, and there drank but a portion of a glass of beer. He wore a holster containing his revolver. This was a departmental requirement when he was "off duty." Herbert expressed a desire to see the revolver. Cavanaugh testified: "Rather than have him take it out, as he was fooling around, I figured I would take it out and show it to him. I took it out, and broke it. When you break it, the bullets are ejected automatically. I broke it open, but one must have been caught. It stayed in the gun. Then I went to hand it to him, with the pressure of his hand and mine, the trigger went off." The bullet remaining in the revolver was discharged. It mortally wounded Herbert; his death occurred on the following day.

Of the decedent, Cavanaugh said: "I would not say he was drunk; he had a few beers." He testified further: "Q. When you broke the gun, did you tilt it, and did the bullets fall out? A. Five fell out, and one stayed in. Q. Did you know at the time you put the bullets in your pocket that only five fell out? A. No; I did not. I thought they all fell out. * * * Q. As you went to show it to him, what did he do? A. He went to take the gun. From the pressure of his hand coming against mine and against the trigger, he went to take the gun, and we heard a report." On cross-examination, he admitted that the following version of the occurrence, given in the form of a written statement shortly after it took place, was correct: "Herbert then asked me to see the gun. I took my service revolver out from the holster, broke it open and took the bullets out. I didn't examine the revolver to see if all the bullets were out, but *I put the bullets in my coat pocket and didn't* count them. I closed my revolver, placed my finger on the trigger, placed my revolver against Herbie's breast, and I accidently pulled the trigger. The revolver went off." Edward McCaffrey, a friendly witness, testified thus: "My brother was joshing

Cavanaugh about why he should carry his gun on his day off. So, Cavanaugh says, 'it is the rule of the department. We must carry it at all times.' Then this brother of mine says to him, 'I don't think you would know what to do with that gun if you had to use it.' Cavanaugh takes the gun out of his holster and breaks it open; takes some of the bullets out of it. I mean, he thought he had them all out. He puts the bullets in his pocket; points the gun at my brother, and says, 'I will show you how we would use this on tough guys,' he says. He pulls the trigger four or five times. All of a sudden, I heard a shot." Although Cavanaugh insists that he was not at the time indulging in intoxicants, there is evidence to show that he was in the saloon for an hour or more before the fatal occurrence.

It indisputably appears that Cavanaugh was not, in the use of the gun, actuated by malice; the sole question litigated below was whether he was thereby guilty of conduct unbecoming an officer and gentleman, and neglect of duty, in violation of departmental rules and regulations. The specification was that "without just cause or provocation," he drew his revolver and handled it "in such a careless and negligent manner that it was fired and a bullet discharged therefrom," causing death. The departmental head found him guilty of the offenses charged, and dismissed him from the service. The civil service commission, on appeal, directed that Cavanaugh be "returned to duty, as soon as practicable after this date on his final and complete waiver of any claim to compensation for any or part of the period during which he has not been on active duty." This judgment was predicated upon findings that "the whole unfortunate affair was purely accidental," and that Cavanaugh "should be penalized in order to impress upon him the seriousness of his part in this unfortunate accident and it is willing that he shall be returned to duty, providing no claim shall be made by him, or on his behalf, for any compensation during the period from September 12th, 1932, to the date of his restoration to duty after this third day of July, 1934." The municipality and its director of public safety thereupon sued out this *certiorari*.

The judgment of the civil service commission cannot be sustained. This body is a creature of statute; its powers are special and limited, and it can exercise only such authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objects for which the commission was created. Any reasonable doubt of the existence of any particular power in the commission should be resolved against the exercise of such authority. Section 24 of the Civil Service act (*Pamph. L.* 1908, *pp.* 235, 250; 3 *Comp. Stat., p.* 3804), as amended by chapter 236 of the laws of 1917 (*Pamph. L.* 1917, *p.* 796), contains the following grant of authority in cases such as this:

"If, on such hearing, the civil service commission shall disapprove of such order of removal, discharge, fine or reduction the same shall be and remain of no effect. The civil service commission may, if in its opinion the provisions of this act have not in the matter of such order for removal, discharge, fine or reduction been fully complied with, or if an affidavit that they have been violated shall be presented, of its own motion direct such hearing and approve or disapprove, as the case may be, such order of removal, discharge, fine or reduction, the same as if an application for investigation had been made, as aforesaid."

This provision, fairly and reasonably construed, does not include the power to modify a judgment lawfully rendered by the departmental head, where, as here, it was within his power and is supported by good and sufficient cause. Where the findings of guilt of misconduct are reasonably supported by competent evidence, the fitness of the accused servant for further public service, or the punishment to be imposed in the event that dismissal is not regarded as essential, are matters resting within the sound discretion of the departmental head; and there is no review unless, perchance, there be a clear abuse of discretion. No such discretion is vested by the statute in the civil service commission, in the event of the statutory inquiry by that body; and none can be reasonably

implied as incident to the express grant of authority in the premises. It is, of course, conceivable that the discipline visited upon the convicted servant may be so utterly disproportionate to the offense as to constitute an arbitrary and unreasonable exercise of power, and therefore a clear abuse of discretion. For instance, the dismissal of a police officer who failed, through mere inadvertence, to signal his presence on post at a time prescribed by the regulations, and whose service record was not otherwise subject to criticism, might well be so classified. The circumstances may be such as to afford a reasonable basis for the presumption that the removal was induced by considerations other than those contemplated by the statute. But it is not necessary, for a determination of the issue here, to pursue this; the case does not, as will be hereafter pointed out, exhibit an abuse of power.

Any doubt as to the legislative intention and purpose in this regard is dispelled by the phraseology of section 34 of chapter 176 of the laws of 1930. *Pamph. L.* 1930, *pp.* 606, 626. This is a supplement to the original act, and the declared purpose was "to provide a modern personnel system for positions included in the *state* classified service." It does not relate in anywise to positions in the *municipal* classified service. Section 34 deals with "removals in the state service." It ordains, *inter alia,* that the "investigation, inquiry or hearing provided for" therein, upon an appeal by the removed employe, or upon the commission's own initiative, shall be "for the purpose of fairly determining whether or not the employe involved, by reason of his act or acts as charged and his record of service merits continuance therein or should be removed therefrom or otherwise disciplined for the good of the service;" and that the commission shall have authority, "when in its judgment the facts warrant, to modify or amend the penalty imposed by the appointing authority or substitute some other penalty than that imposed except removal from the service shall not be substituted for some lesser penalty. Its decision shall state whether the removal of such employe is approved or whether he is to be restored to his position

without loss of pay, transferred to another position in the same class, fined, demoted, suspended without pay or with reduced pay for a period not exceeding six months or to be reprimanded or otherwise dealt with." The limitation of the power thus conferred to positions in the state classified service is proof of a legislative intention and purpose to withhold that power as to all other positions in the classified service. We are persuaded that this broad grant of authority, in respect of positions in the state classified service, evinces a legislative design not to withdraw from the municipal departmental heads the power of removal and discipline in dealing with delinquent public servants embraced within the act. The extension of this rule to municipal employes would unquestionably be an invasion of the principle of home rule; and it may very well be that the legislature views the curbing of disciplinary power in such cases as an unjustifiable assault upon local autonomy.

At all events, there is no expression of a legislative intent to substitute the judgment of the civil service commission, in respect of the disciplinary action to be taken when a servant has been adjudged guilty of misconduct, for that of the departmental head, upon whom, in the final analysis, rests the responsibility of sedulously maintaining departmental morale and discipline and adequate standards of service.

Statutes in *pari materia* are to be construed together as forming one act. If in a subsequent clause of the same act provisions are introduced which show the sense in which the legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated in the foregoing act, is a direction to courts in expounding the provisions of the law. *Pondelick* v. *Passaic County*, 111 *N. J. L.* 187; 168 *Atl. Rep.* 146. This doctrine is apposite here; it effectively disposes of the claim that the power sought to be exercised here is implied in the grant of authority contained in the original act.

The case of *Newark* v. *Civil Service Commission*, 114 *N. J. L.* 406; 177 *Atl. Rep.* 121, is not to the contrary. There the charges of misconduct were not sustained; and it was held that, in such a situation, the civil service commission is vested with authority to nullify a "fine or reduction" as well as a "removal or dismissal."

It is evident that the civil service commission found that the evidence sustained the charges of misconduct. It decreed that a penalty (the loss of pay for the period of his suspension—almost two years) be imposed "to impress upon him the seriousness of his part in this unfortunate accident." The imposition of a penalty *ex necessitate* presupposes guilt of misconduct. And we have reached the conclusion that the evidence sustains the charges. We are unable to perceive upon what theory the accused officer could be exonerated. It was a flagrant offense; its gravity is emphasized by the tragic consequences. The drastic action taken by the director of public safety was fully warranted by the facts. A police officer so conducting himself gives ample demonstration of his unfitness for guardianship of the peace. It was the director's duty to rid his department of irresponsible members. The public safety, and the requirements of departmental discipline, fully justified the course taken here.

The final insistence of respondents is that after the hearing before the civil service commission, and before the rendition of its judgment, one of the members of the commission and the defendant director arrived at an agreement to reinstate Cavanaugh, upon condition that he waive "any rights that he might have for compensation during the period which he was off duty." It is claimed that, by virtue thereof, the prosecutors are "estopped from raising this issue." The making of such an agreement is vigorously denied. We are not called upon to decide this issue of fact; the point is frivolous. This alleged understanding played no part in the determination of the civil service commission; the commission's memorandum makes no reference to it. And it should be observed, in passing, that the public has an interest which is not served by this method of procedure.

It results that the civil service commission correctly found respondent Cavanaugh guilty of the charges preferred, but erroneously modified the judgment of removal.

The judgment of the civil service commission is accordingly modified, and, as so modified, affirmed.