349 S.E.2d 443

**Leonard UNDERWOOD and Walter Price, III, Etc.**

v.

**The COUNTY COMMISSION OF KANAWHA COUNTY, Etc.**

**No. 17289.**

Supreme Court of Appeals of West Virginia.

Oct. 2, 1986.

Leonard I. Underwood, St. Albans, Walter Price, III, pro se.

Gary A. King, St. Albans, for appellee.

NEELY, Justice:

This is an appeal from a denial of a writ of mandamus in the Circuit Court of Kanawha County. Appellants seek to compel the County Commission of Kanawha County, sitting as the Board of Canvassers, to perform certain acts required by *W.Va. Code* 3–1–1 *et seq.* [1986 Replacement Vol.]. The controversy arises out events surrounding the 13 May 1986 primary election in Kanawha County. Because the appellants allege several deficiencies, we shall deal with each separately.

## I

■ The parties first stipulate that the county commission conducted the canvass without physically inspecting the poll books and poll tickets used in the election. *W. Va. Code* 3–6–9 [1985] provides in part:

> They [the county commissioners] shall convene as the canvassing board at the courthouse on the fifth day (Sundays excepted) after every election held in their county, or in any district thereof, and the officers in whose custody the ballots, poll books, registration records, tally sheets and certificates have been placed shall lay them before the board for examination. * * *

The statute clearly directs the custodial officers to place before the commission all of the items listed, including poll books and poll tickets. Moreover, this is presumably not done just for drill. Comparison of the number of ballots cast in a precinct with the number of poll tickets reveals whether the number of ballots cast is (as it should be) identical with the number of people who voted. Thus, a poll ticket audit should reveal whether a ballot box has been stuffed or ballots have been removed. Such a poll ticket audit was not conducted by the commission.

The appellees urge that *W. Va. Code* 3–6–9 [1985] is merely directory, and that such a poll ticket audit is therefore not required. However, the language of the statute is explicit: the custodial officers *shall* lay the poll books before the commissioners. "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. West Virginia Public Employees Ins. Bd.*, 171 W.Va. 445, 300 S.E.2d 86 (1982). The poll ticket audit is therefore a mandatory, non-discretionary duty that the commission is bound to perform.

## II

■ The parties next stipulate that a quorum of the board of canvassers was not continuously present in the Kanawha County Courthouse Complex during the hand count of the ballots. *W. Va. Code* 3–4A–28(4) [1982] provides in part:

> During the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the ballot cards cast therein counted manually. The same random selection shall also be counted by the automatic tabulating equipment. If the variance between the random manual count and the automatic tabulating equipment count of the same random ballots, is equal to or greater than one percent, then a manual recount of all ballot cards shall be required. * * *

*W. Va. Code* 3–6–9 [1985] provides in part:

> * * * They [the board of canvassers] may adjourn from time to time, but no longer than absolutely necessary, and, when a majority of the commissioners are not present, their meeting shall stand adjourned until the next day, and so from day to day, until a quorum is present. * * *

*W. Va. Code* 3–6–9 [1985] thus requires the presence of a quorum during the entire canvass, and that includes specifically when the hand count required by *W. Va. Code* 3–4A–28(4) [1982] is conducted. Once again the statutory language is explicit: "When a majority of the commissioners are not present, their meeting *shall* stand adjourned ... until a quorum is present." [emphasis supplied]. The requirement of the presence of a quorum at the hand count is therefore mandatory, not directory. *Nelson, supra.*

## III

■ Appellants pray that we issue a writ ordering the county commission to refrain from certification of the 13 May 1986 primary election until such time as the commission: 1) conducts a canvass of the returns employing a poll ticket audit, and 2) conducts the hand count prescribed by *W. Va. Code* 3–4A–28(4) [1982] in the presence of a quorum of the board of canvassers.

We note initially that Mr. Underwood and Mr. Price, the appellants in this proceeding, are the only candidates requesting this relief. None of the other candidates for nomination in the 13 May 1986 primary election has registered with this Court any

dissatisfaction with the manner in which the canvass was conducted. Mr. Underwood won his race. Mr. Price concedes that he lost his race by so great a margin that he does not expect the relief requested to alter the outcome. Therefore, because the requested relief would not change the outcome of either of the appellants' races, we decline to issue the writ. However, the requirements of a poll ticket audit and the presence of a quorum of the commission during the hand count shall be strictly applied in the future.

### IV

■ Finally, the parties stipulate that there were errors in the application deck used to tabulate the votes in the Kanawha County races.[1] These errors were not identified during the public test required by *W.Va.Code* 3–4A–26 [1982]. After the public test, the deck was certified errorless by the commission, and a certified, duplicate copy of the application deck was sent by certified mail to the offices of the state election commission in accordance *W.Va. Code* 3–4A–26 [1982]. Pursuant to *W.Va. Code* 3–4A–26 [1982], the deck was again tested immediately before and immediately after the official count. However, the errors were still not identified.[2] The errors were finally brought to the attention of the commission before the canvass. The commission then rectified the identified errors and re-tabulated the votes in the affected races pursuant to *W.Va.Code* 3–4A–29(1) [1969].

Appellants claim that the existence of these errors in the deck places the integrity of the entire deck, and therefore the integrity of the entire election, in question. Further, appellants contend that the failure to identify program errors despite seven

previous tests of the deck raises the possibility that the deck was tampered with after it was certified as errorless by the commission. Appellants therefore request that we order the release of the duplicate deck sealed at the offices of the state election commission so that the decks may be examined and compared.

*W.Va.Code* 3–4A–26 [1982] provides in pertinent part:

> * * * Immediately after conclusion of this completed test, a certified duplicate copy of the program deck shall be sent by certified mail to the offices of the state election commission, where it shall be preserved and secured for one year, and made available for comparison or analysis by order of a circuit court or the supreme court of appeals. * * *

The integrity of the mechanism for tabulating the results of public elections is unquestionably a matter of the utmost public concern. We therefore order that the program and application decks placed with the state election commission, including all clear cards, option cards, and office definition cards, be brought from the office of state election commission for purposes of analysis and comparison with the decks employed in the actual count.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Kanawha County is reversed and the writ of mandamus for which appellants prayed below is here awarded, as moulded, and the case is remanded for further proceedings consistent with this opinion.

Writ awarded as moulded.

1. There are three different methods of voting used in the various counties of West Virginia. The first is the hand-marked, paper ballot. The second is the mechanical voting machine. The third is the hand-punched, computerized ballot. With this third method, the voter punches out holes in a ballot card, each hole corresponding to a candidate. The punched ballots are then run through a computer, which tabulates the votes cast for each candidate. It is this third voting method that is employed in Kanawha County.

2. We note that the errors identified pertained only to decks used in the tabulation of results in district political party executive committee races. There are 72 separate party executive committee races spread among the 257 election precincts. Each committee race, concerning as it does but a small subset of precincts, requires a separate subprogram to supplement the larger, county-wide program. It is not alleged that the identified errors in the application deck had any effect on the tabulation of the results in any county-wide races.