376 S.E.2d 639

**Jim LILLER, Sheriff of Preston County, and Preston County Sheriff's Department**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Cynthia McCrobie.**

**Jim LILLER, Sheriff**

v.

**Cynthia D. McCROBIE**

v.

**PRESTON COUNTY CIVIL SERVICE COMMISSION FOR DEPUTY SHERIFFS.**

Nos. 18318, 18535.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

Charles G. Brown, Atty. Gen., Antionette Eates, Asst. Atty. Gen., Charleston, Barbara Fleischauer, Morgantown, for Cynthia McCrobie.

Melvin C. Snyder, Jr., Pros. Atty., Kingwood, for Liller.

Edwin C. Runner, Kingwood, for Civil Service Com'n.

MILLER, Justice.

Cynthia McCrobie, a former deputy sheriff in Preston County who was discharged by Preston County Sheriff Jim Liller, appeals two adverse decisions of the Circuit Court of Preston County, both of which arise from circumstances of her employment and discharge. Deputy McCrobie first appeals the circuit court's decision concerning her civil service grievance, which denied her back pay and attorney's fees under W.Va.Code, 7–14–1, *et seq.* (1986). She also appeals the circuit court's dismissal of her sex discrimination complaint to the West Virginia Human Rights Commission under W.Va.Code, 5–11–1, *et seq.* (1967). Because of the interrelationship of both appeals, we have considered them together and, for the reasons set forth below, we reverse the decisions of the circuit court.

1. Sheriff Liller testified that he had heard rumors that Deputy McCrobie was pregnant. Deputy McCrobie testified that the chief deputy, James Fields, had congratulated her on the pregnancy in January and that she had talked to Chief Deputy Fields about her uniform.

I.

On February 20, 1984, Deputy McCrobie became the first woman deputy sheriff in Preston County. In January, 1986, Deputy McCrobie became pregnant. She desired to continue to work both before and after the birth of her child. On April 10, 1986, Deputy McCrobie reported for work out of uniform because her uniform no longer fit properly, and Sheriff Liller called her into his office to speak with her concerning her uniform. Before this time, Deputy McCrobie had not communicated directly to Sheriff Liller any information concerning her pregnancy.[1] As a result of the April 10, 1986 meeting, Sheriff Liller sent Deputy McCrobie home. He provided her with information on sick leave and requested that she provide him with information on her physical limitations, including any limitations recommended by her doctor.

On April 18, 1986, the parties reached an understanding concerning her duties and uniform. Sheriff Liller paid the cost of the maternity uniforms and she provided the sheriff with a list of duties she could perform, one of which was filling in for a dispatcher. The sheriff credited her with working on April 10 and 18, 1986, and counted the remaining days missed as three compensatory and two vacation days. On her return, Deputy McCrobie worked as a dispatcher until her discharge on June 14, 1986.

In Preston County, the dispatcher's office serves as a communication center for all emergency services, including fire and police, and is operated twenty-four hours per day. On June 14, 1986, Deputy McCrobie was scheduled to work in the dispatch office on the 12:01 a.m. to 8:00 a.m. shift. The schedule was prepared by Vince Padovini, the chief dispatcher, about the end of May for the entire month of June.[2] When this schedule was first prepared, Deputy McCrobie objected. At a meeting with the chief dispatcher and chief deputy, she was

2. In June, 1986, the sheriff's department had budgetary difficulties and did not employ a part-time dispatcher and did not replace a regular dispatcher when one resigned. Deputy McCrobie was scheduled to work the time slots of the dispatcher who had resigned.

advised that she would have to work the days listed on the schedule.

On June 4, 1986, Deputy McCrobie submitted a written request to Chief Deputy Fields for compensatory days off, one of which was June 14, 1986. Chief Deputy Fields decided to deny her request, but was unable to contact her verbally before he left for vacation on June 6, 1986, and did not notify her in writing of his denial. No changes were made in the schedule. By June 12, 1986, Deputy McCrobie had received no notice concerning her request.

The usual practice of the sheriff's department concerning compensatory days off was to submit a written request and to receive verbal notification of approval or denial.[3] Deputy McCrobie left a memo dated June 12, 1986, for the day shift dispatcher. The memo stated that she did not know if she had received approval for a compensatory day off on the 14th, and requested the dispatcher to "count the 14th as a sick day and call me sometime around 1200 hours on the 14th to let me know about the 15th." Deputy McCrobie did not report for work on June 14, 1986, and, because of the advance notice, Sheriff Liller made arrangements for another dispatcher for the midnight shift.

About 12:30 p.m. on June 14, 1986, some four hours after the scheduled shift ended, Deputy McCrobie spoke to Sheriff Liller to see if her leave had been approved. Sheriff Liller told her that she was terminated because of her failure to report as scheduled. By letter dated June 16, 1986, Sheriff Liller confirmed the termination of her employment because of (1) her failure to report for duty on June 14, 1986, and (2) her "failure to report for duty for a number of days in April of 1986 ..., without any prior approval, [which] has demonstrated a lack of regard or responsibility by a Deputy Sheriff."

As a result of her termination, Deputy McCrobie sought relief from both the Civil Service Commission for deputy sheriffs in Preston County (CSC) under W.Va.Code, 7–14–1, et seq. (1987), and the West Virginia Human Rights Commission (HRC) under W.Va.Code, 5–11–1, et seq. (1967). On June 18, 1986, Deputy McCrobie filed a grievance with the CSC.[4] Following a hearing held on July 18, 1986, the CSC entered an order on September 15, 1986, finding that although Deputy McCrobie's action indicated a wrongful intent, her action did not constitute gross misconduct because she gave notice as to her time off and the rights and interests of the public were not adversely affected. Based on this finding of insufficient cause for termination, the CSC ordered that Deputy McCrobie be reinstated immediately to her position without back pay and without an award of attorney's fees.

This order was appealed to the Circuit Court of Preston County by Deputy McCrobie on the basis that the CSC was required to award back pay and attorney's fees under W.Va.Code, 7–14–17(a) (1981), once reinstatement was found to be appropriate. The sheriff also appealed contending the record supported the discharge. On July 7, 1987, the circuit court upheld the decision of the CSC as to reinstatement, but declined to order back pay or attorney's fees.

On September 5, 1986, the HRC received background information from Deputy McCrobie. On September 12, 1986, a Memorandum of Complaint was filed by the HRC alleging sex discrimination. Sheriff Liller filed a motion to dismiss and an answer with the HRC. By letter dated November 3, 1986, Howard D. Kenny, Executive Director of the HRC, informed the Sheriff that the HRC had jurisdiction in this matter.[5]

---

**3.** Three former deputies testified that on occasion, they had had their requests for time off approved, but had received no notification. The deputies assumed approval of the request and did not report for work. Deputy McCrobie testified that on one occasion, she had reported for work only to be told that her vacation had started that day as per her request.

**4.** On April 14, 1986, Deputy McCrobie requested a hearing before the CSC concerning the April incident. No separate hearing was held.

**5.** The sheriff also sought dismissal of Deputy McCrobie's complaints because parts of the complaints were stamped received by the HRC after the ninety-day filing period. However, the memorandum of the complaint was filed and

On January 9, 1987, the HRC issued a subpoena duces tecum to the Preston County Sheriff's Department. On January 16, 1987, Sheriff Liller requested that the Circuit Court of Preston County quash the subpoena duces tecum and dismiss the case before the HRC. The circuit court subsequently granted the motion, quashed the subpoena, and dismissed the case.[6]

On appeal, Deputy McCrobie argues that the circuit court in her civil service case erroneously denied her back pay and attorney's fees in contravention of W.Va.Code, 7–14–17(a) (1981). In her human rights case, Deputy McCrobie argues that the circuit court incorrectly applied the exclusivity provisions of W.Va.Code, 5–11–13 (1983). Because we agree, we reverse both decisions of the circuit court.

## II.

■ Deputy McCrobie contends that the CSC's order granting her reinstatement contained a mistake of law, because it failed to grant her back pay and attorney's fees as required by W.Va.Code, 7–14–17(a) (1981):

"[I]n the event the removing sheriff fails to justify his action before the commission, then the deputy removed, discharged, suspended or reduced *shall be reinstated with full pay,* forthwith and without any additional order, *for the entire period during which he may have been prevented from performing his usual employment....* The deputy if reinstated or exonerated, shall, if repre-

sented by legal counsel, be awarded an attorney fee of no more than two hundred fifty dollars[.]" (Emphasis added).[7]

We have consistently held that the word "shall" in a statute must be given a mandatory connotation, absent a showing of a contrary intent. In Syllabus Point 1 of *Underwood v. County Comm'n of Kanawha County,* 176 W.Va. 740, 349 S.E.2d 443 (1986), we stated:

" 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syl. Pt. 1, *Nelson v. West Virginia Public Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1982)."

W.Va.Code, 7–14–17(a) (1981), uses "shall" and thus clearly requires the award of back pay and certain limited attorney's fees when a deputy is reinstated.

■ We have traditionally held that civil service commissions have no authority beyond that bestowed by statute or necessarily implied from such statute, as stated in *Spradling v. Hutchinson,* 162 W.Va. 768, 771–72, 253 S.E.2d 371, 374 (1979):

"In particular, we have held that the police civil service commission 'owes its creation and existence to statute. It has no inherent powers ... [but] only such powers as are conferred upon it by statute, either expressly or by necessary or fair implication.' *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 681, 143 S.E.2d 535, 542 (1965). *See*

---

notarized on September 12, 1986, and clearly falls within the filing period. Rules promulgated by the commission for proceeding under the act are helpful. 77 CSR 2–3.5(d)(3) provides:

"Memorandum of complaint—Where the Commission is informed by an individual, who is claiming to be aggrieved and who has given sufficient information, prior to the expiration of the ninety (90) day limitation of an alleged violation of the Act, the Commission may institute a memorandum of complaint. Such memorandum of complaint shall contain the essential elements of a complaint as required by these regulations, excepting signature and verification by the complainant and shall be signed, dated and verified before a notary public or other person duly authorized

to administer oaths and take acknowledgements by the person drafting such memorandum of complaint. A complaint received by the Commission subsequent to and based upon said Memorandum of complaint shall be deemed filed as of the date of said memorandum of complaint."

**6.** The parties do not discuss the authority of a circuit court to dismiss a case pending before the HRC. Consequently, we do not address this issue.

**7.** W.Va.Code, 7–14–17(b) (1981), provides for additional fees if the deputy is reinstated on appeal to the circuit court or to this Court, but sets an aggregate cap which "shall not exceed one thousand dollars for any member litigant."

also: *Miller v. City of Morgantown,* W.Va. [158 W.Va. 104], 208 S.E.2d 780 (1974) and *State ex rel. City of Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970)."

In *State ex rel. City of Huntington v. Lombardo, supra,* this Court granted a writ of prohibition preventing a police civil service commission from conducting a hearing in a case involving a five-day suspension of a police officer. The court concluded that the statutory provision involved did not confer jurisdiction on the commission to conduct a hearing in such circumstances, and stated in Syllabus Point 3, in part:

"A police civil service commission ... has only such jurisdiction and powers as are conferred upon it by statute. It has no inherent jurisdiction or powers."

The circuit court attempted to graft onto the civil service statute for deputy sheriffs a provision, similar to the state civil service provision contained in W.Va.Code, 29–6–15 (1977), which allows the State Civil Service Commission to adjust remedies if it finds that the action taken "by the appointing authority was too severe." In particular, part of the Commission's remedial powers is "restoration of all or part of an individual's back pay or wages." W.Va.Code, 29–6–15.[8] There is, however, no corresponding language granting such power in the deputy civil service statute. Its language is plain and unequivocal and provides that if the sheriff's action cannot be justified, the deputy shall be reinstated for the entire period he was prevented from performing his usual employment. W.Va.Code, 7–4–17(a).

In the absence of such remedial language, and in the face of the positive statutory command for back pay, we cannot infer that a deputy civil service commission has the power to waive back pay. This same language is contained in several other civil service statutes.[9] It seems apparent that if the legislature intended these commissions to have the broad remedial powers given to the State Civil Service Commission, it would have placed similar language in their statutes. We advert to our general rule of statutory construction contained in Syllabus Point 1 of *Jarrell v. State Workmen's Compensation Comm'r,* 152 W.Va. 418, 163 S.E.2d 798 (1968):

"When a statute is clear and unambiguous and the legislative intent is plain, it is the duty of the courts to apply the statute in accordance with the legislative intent therein clearly expressed."

Other courts have concluded that civil service commissions acting under similar statutory provisions have only a limited function, and no authority to modify the discipline imposed by the employer, if the evidence supports the charges. *Jenkintown v. Civil Serv. Comm'n of Jenkintown,* 84 Pa.Commw. 183, 478 A.2d 941 (1984); *Simpson v. Handberry,* 159 Fla. 805, 33 So.2d 31 (1948); *City of Newark v. Civil Serv. Comm'n,* 115 N.J.L. 26, 177 A. 868 (1935); 62 C.J.S., *Municipal Corporations* § 579i (1949).

For the foregoing reasons, the circuit court's decision is reversed and the case is remanded to consider the award of back pay and attorney's fees.

### III.

In the second case, the dismissal of the HRC complaint, Sheriff Liller argued that Deputy McCrobie, by requesting a hearing before the CSC, had chosen her forum and was thereby precluded from having the HRC consider her charge of sex discrimination against the sheriff's department. The sheriff places considerable re-

---

**8.** The relevant language of W.Va.Code, 29–6–15 (1977), states:

"If the commission finds that the action complained of and taken by the appointing authority was too severe but was with good cause, the commission may provide for such other remedy or remedies, as may be deemed appropriate and in the best interest of the parties. The commission shall expressly have the authority by order to provide for such remedies as it may deem to be appropriate ... and such remedies shall include, but not be limited to, the restoration of all or part of an individual's back pay or wages for the period of the suspension...."

**9.** W.Va.Code, 7–14B–17 (1983) (correctional officers); W.Va.Code, 8–14–20 (1980) (police officers); W.Va.Code, 8–15–25 (1980) (firefighters).

liance on W.Va.Code, 5–11–13(a) (1983), which provides in pertinent part, that "[i]f such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein." [10]

Several points can be made with regard to this exclusivity language in W.Va.Code, 5–11–13(a).[11] First, the exclusivity applies only where the complainant has brought a previous discrimination claim alleging what would also constitute a violation of the human rights act. This is apparent from the statutory language which speaks of a claim "based on the same grievance of the complainant" and "based on such grievance." Second, it is apparent upon reading the exclusivity provision as a whole that the legislature was principally concerned with preventing discrimination claims from being litigated under both the state human rights act and a local anti-discrimination law. The first sentence refers to "any of the provisions of any existing or hereafter adopted municipal ordinances, municipal charters or of any law of this state relating to discrimination...." At the time the exclusivity clause was enacted in 1967, there was no State statute prohibiting race and sex discrimination in employment.[12]

Another court has reached much the same conclusion in applying the exclusivity provisions of the Pennsylvania Human Relations Act, which contains an exclusivity provision essentially identical to ours. In *Lukus v. Westinghouse Elec. Corp.*, 276 Pa.Super. 232, 419 A.2d 431 (1980), the Pennsylvania court discussed this provision in a case involving a female employee who had instituted an action in state court alleging that the exclusion of pregnancy-related disabilities from the employer's disability plan violated the state human relations act. She had previously filed a complaint upon the same grounds with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.* The court rejected the employer's argument that the exclusivity provision barred the employee's subsequent civil action alleging a violation of state law, and stated:

> "This provision makes clear that the Legislature was concerned with the relationship between the PHRA and any other 'municipal ordinance, municipal charter or ... law of this Commonwealth *relating to discrimination;*' nowhere does the Legislature address the relationship between the PHRA and federal discrimination laws." 276 Pa.Super. at 269, 419 A.2d at 450–51. (Emphasis added).

It is clear that the legislature did not intend this exclusivity provision to absolutely preclude an employee who files an unemployment or civil service claim from subsequently filing a human rights complaint with the HRC alleging an unlawful discriminatory practice. We conclude that

---

**10.** W.Va.Code, 5–11–13(a) (1983), provides:

"Except as provided in subsection (b), nothing contained in this article shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this state relating to discrimination because of race, religion, color, national origin, ancestry, sex, age, blindness or handicap, but as to acts declared unlawful by section nine [§ 5–11–9] of this article the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this article, he may not subsequently resort to the procedure herein. In the event of a conflict between the interpretation of a provision of this article and the interpretation of a similar provision contained in any municipal ordinance authorized by charter, the interpretation of the provision in this article shall apply to such municipal ordinance."

**11.** In Syllabus Point 1 of *Price v. Boone County Ambulance Auth.*, 175 W.Va. 676, 337 S.E.2d 913 (1985), we examined W.Va.Code, 5–11–13(a) (1983), and concluded: "A plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act."

**12.** 1967 W.Va. Acts ch. 89. The exclusivity provision remained unchanged until 1983, except for language that was added to reflect amendments to the human rights act extending coverage to blindness, age, sex, and handicap discrimination. 1983 W.Va. Acts ch. 105.

the legislature did not intend that the exclusivity provisions of W.Va.Code, 5–11–13(a) (1981), would automatically preclude an employee who files a civil service claim from subsequently filing a complaint with the HRC alleging a violation of the West Virginia Human Rights Act.

It is obvious that there can be a different basis for each claim. Here the grievance filed by Deputy McCrobie involved the validity of her termination. It did not seek to litigate whether her discharge was a result of sex discrimination. This is clear from the findings of the deputy civil service commission, which do not discuss the issue of sex discrimination. Its findings focus on whether, under the sheriff's policies regarding taking time off, there had been a sufficient violation to warrant a discharge. Thus, we believe that the exclusivity provisions of W.Va.Code, 5–11–13(a), are not applicable to the facts of this case.[13]

■ A related preclusion argument is advanced under the doctrines of *res judicata* and collateral estoppel. We have recognized that these doctrines can be applied to quasi-judicial determinations of administrative agencies. In order for preclusion to apply, the decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court of law. Finally, the issues involved must be similar to those sought to be adjudicated in the second forum. We indicated in *Mellon–Stuart v. Hall*, 178 W.Va. 291, 299, 359 S.E.2d 124, 132–33 (1987), that, despite some early reluctance:

> "[T]here has been a growing trend toward utilizing res judicata as evidenced by *United States v. Utah Construction*

*& Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966), where it was observed: 'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.' "[14]

The underlying purpose of both doctrines is to prevent relitigation of matters about which the parties have had a full and fair opportunity to litigate and which were in fact litigated.

The identicality of issues litigated is a key component to the application of administrative res judicata or collateral estoppel claims, as we discussed in *Mellon–Stuart*, 178 W.Va. at 299, 359 S.E.2d at 132: "Res judicata focuses on whether the cause of action in the second suit is the same as in the first suit. The central inquiry on collateral estoppel is whether a given issue has been actually litigated by the parties in the earlier suit." *See also Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983).

■ In the present case, the CSC acted in a judicial capacity and resolved the disputed issues of fact properly before it through a formal and adversary procedure. However, the critical question is whether there was an identicality of issues in the civil service case and in the complaint that was to be litigated before the HRC.[15]

As we have earlier stated, it is clear from the record that the CSC did not address the question of whether there had been sexual discrimination against Deputy McCrobie. Its focus was on whether the procedures she followed in taking off from work on

---

**13.** Furthermore, there exists the question not raised below as to whether in view of the primacy given to the Human Rights Commission to handle discrimination claims under W.Va.Code, 5–11–13, a civil service commission, which does not have specific statutory authorization, could handle a discrimination case.

**14.** This principle was expressed in Syllabus Point 3 of *Mellon Stuart*:

> "An assessment of three factors is ordinarily made in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a

judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body."

**15.** Because the circuit court dismissed the HRC complaint and quashed the subpoena duces tecum, the HRC did not have an opportunity to develop a record on Deputy McCrobie's allegations of discrimination.

June 14, 1986, and several days in April, 1986, were improper and warranted her discharge. In the HRC proceeding, the issue would be whether the sheriff's discharge was motivated by a sexually discriminatory intent. Consequently, we conclude that where the issue of sex discrimination has not been decided by a deputy sheriff civil service commission, the involved deputy is not foreclosed from filing a complaint with the human rights commission.[16]

Because there is no identicality of issue present in this case, we need not decide the question whether, if the CSC had actually decided the sex discrimination issue,[17] it could be subsequently litigated in front of the HRC.[18]

We have also held in several cases that where separate legislative enactments exist which provide separate administrative remedies, preclusive doctrines will not necessarily be applied. *See Collins v. Elkay Mining Co.,* 179 W.Va. 549, 371 S.E.2d 46 (1988); *Davis v. Kitt Energy Corp.,* 179 W.Va. 37, 365 S.E.2d 82 (1987); *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987).

■ Although we have concluded that Deputy McCrobie in not foreclosed from pursuing her claim is front of the HRC,

this does not mean that she can recover duplicate monetary relief.[19]

Based upon all of the foregoing, the final orders of the circuit court are reversed and these cases are remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

cannot be precluded by a finding of a state administrative agency on the same issue.

---

**16.** Other courts have looked to the purpose of civil rights acts and have not applied res judicata or collateral estoppel to foreclose litigation when the issues presented and decided have not been identical. *Rosenfeld v. Dept. of Army,* 769 F.2d 237 (4th Cir.1985); *Moore v. Bonner,* 695 F.2d 799 (4th Cir.1982); *Patzer v. Bd. of Regents of Univer. of Wis. Sys.,* 763 F.2d 851 (7th Cir. 1985); *Cooper v. City of North Olmsted,* 576 F.Supp. 592 (N.D.Ohio 1983); *Snow v. Nevada Dept. of Prisons,* 543 F.Supp. 752 (D.Nev.1982); *but see, Stillians v. State of Iowa,* 843 F.2d 276 (8th Cir.1988).

**17.** This premise assumes that a deputy sheriff civil service commission can be deemed, in the absence of any specific statutory language, to have jurisdiction to settle a sexual or other discrimination claim, a point that we do not decide.

**18.** The United States Supreme Court in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), has decided that a discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,*

**19.** W.Va.Code, 5–11–13(c) (1983), sets forth the relief which may be granted upon a finding that a respondent has engaged in an unlawful discriminatory practice. W.Va.Code, 5–11–13(c) (1983), provides that the relief may include, but is not limited to:

"reinstatement or hiring of employees, granting of back pay or any other legal or equitable relief as the court deems appropriate. In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant."

Because Deputy McCrobie in her civil service case has been reinstated and will be awarded back pay and limited attorney's fees, the relief available under W.Va.Code, 5–11–13(c) (1983), does not include a double award of back pay, and any award of litigation costs must be directly related to Deputy McCrobie's complaint under W.Va.Code, 5–11–1, *et seq.* (1987).