# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

FILED

June 4, 2025

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-ICA-269

_____

UNION CARBIDE CORPORATION,
a subsidiary of THE DOW CHEMICAL COMPANY,
Employer Below, Petitioner,

v.

CHRISTINA DEARIEN (Decedent) and THOMAS DEARIEN (Dependent),
Claimant Below, Respondent.

_____

Appeal from the West Virginia Workers' Compensation
Board of Review

JCN: 2022005028

AFFIRMED
_____

Submitted:  April 30, 2025
Filed:  June 4, 2025

Timothy E. Huffman, Esq.                R. Dean Hartley, Esq.
Jackson Kelly PLLC                      Hartley Law Group, PLLC
Charleston, West Virginia               Wheeling, West Virginia
Counsel for Petitioner                  Counsel for Respondent

JUDGE GREEAR delivered the Opinion of the Court.

JUDGE WHITE concurs and reserves the right to file a separate opinion.

GREEAR, Judge:

Petitioner, Union Carbide Corporation, a subsidiary of the Dow Chemical Company ("Carbide"), appeals the May 30, 2024, order of the West Virginia Workers' Compensation Board of Review ("Board") granting fatal dependent's benefits ("dependent benefits") to Thomas Dearien, husband of Christina Dearien ("decedent"). On appeal, Carbide argues that the Board erred by granting Mr. Dearien such benefits, as his claim was barred by the West Virginia Workers' Compensation Office of Judges' ("OOJ") final order affirming the rejection of the decedent's claim for occupational disease benefits made during her lifetime. Further, Carbide contends that the Board's final order was clearly wrong in view of the reliable, probative, and substantial evidence on the record. After our review of the record and applicable law, we affirm the Board's May 30, 2024, order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2019, the decedent filed an application for workers' compensation benefits ("living claim") against Carbide, claiming that she was diagnosed with colon cancer, an occupational disease, while employed by Carbide.[1] A review of the decedent's medical records was conducted, in relation to her living claim, by Mohammed Ranavaya, M.D. Dr. Ranavaya concluded that no credible or reliable evidence existed to establish that the decedent's diagnosis of colon cancer was causally related to her

---

[1] The decedent's living claim was assigned claim number 2019020262-OD. While employed at Carbide, from 2006 to 2018, decedent worked in various job positions including a weighmaster, operator, and scheduling technologist.

1

employment at Carbide. Based upon the opinion of Dr. Ranavaya, the claim administrator ("CA") denied the decedent's living claim by order entered on June 5, 2020. The decedent timely filed a protest of this determination to the OOJ. On August 24, 2021, counsel for the decedent submitted a request to withdraw the protest due to the decedent's death on June 2, 2021. By Order dated August 27, 2021, the OOJ dismissed the protest based upon the motion to withdraw.[2]

On September 10, 2021, Mr. Dearien filed an application for dependent benefits, pursuant to West Virginia Code § 23-4-10 (2010), and argued that the decedent "developed colorectal cancer as a result of her exposure to toxic chemicals" while employed by Carbide.[3] On September 24, 2021, the CA rejected Mr. Dearien's application for dependent benefits based on Dr. Ranavaya's prior report, which found no direct causal connection between the decedent's diagnosis of colon cancer and her employment with Carbide. Further, the CA concluded that the dependent's claim was barred by the principle of collateral estoppel. According to the CA, the OOJ's August 27, 2021, final order dismissing the protest of the decedent's living claim constituted a final resolution to the

---

[2] In its Order Dismissing Protest, the OOJ found that upon consideration of the decedent's motion to withdraw the protest, the motion was granted and the protest was dismissed.

[3] Mr. Dearien's claim for dependent benefits was assigned claim number 2022005028-OD.

claim at issue.[4]  Mr. Dearien timely protested the CA's rejection of his application for dependent benefits.

As part of his protest, Mr. Dearien submitted the medical opinions of Janelle Arthur, Ph.D.; Sean DiCristofaro, M.D.; Timur S. Durrani, M.D.; and Gene Finley, M.D., all of whom opined that the decedent's colon cancer was more likely than not causally connected to her employment at Carbide.  Conversely, in support of the CA's rejection decision, Carbide submitted the medical opinions of Dr. Ranavaya; Eric Christenson, M.D.; Dominik Alexander, Ph.D.; and Jennifer Sahmel, Ph.D., all of whom opined that the decedent's colon cancer was not causally connected to her employment at Carbide.

On May 30, 2024, the Board reversed the CA's rejection of Mr. Dearien's application for dependent benefits and found Mr. Dearien to be entitled to an award of such benefits.  The Board based its conclusion on the evidence presented that the decedent's cancer was, more likely than not, causally related to her occupational exposures.  The

---

[4] In its September 24, 2021, decision, the CA referenced the decedent's living claim and the CA's rejection of such claim on June 5, 2020. The CA stated that the June 5, 2020, decision

> was based upon the opinion of Dr. Ranavaya . . . A protest was filed by the decedent to the June 5, 2020, order. The protest was withdrawn on August 24, 2021, and a final order dismissing the protest was entered by the [OOJ] on August 25, 2021. As a consequence, the rejection order of June 5, 2020, constitutes the final resolution of the issue of a causal connection between the diagnosis of colon cancer and decedent's employment.

3

Board examined the extensive medical records and reports of medical experts and determined that both parties offered qualified and credible expert opinions to such a degree that an equal amount of evidentiary weight existed. Therefore, pursuant to West Virginia Code § 23-4-1g (2003), the Board adopted the resolution most consistent with the claimant's position.[5] In regard to Carbide's argument that Mr. Dearien's dependent claim

---

[5] In its May 30, 2024, order, the Board concluded that

> The evidence regarding a causal link between the chemicals [the decedent] was exposed to at [Carbide] and the development of colorectal cancer is mixed. The parties cite studies, articles, and medical evidence supporting their position. The parties' experts have equally impressive credentials, experience, and expertise. It cannot be found that one side's panel of experts is notably more qualified or more credible than the other. Based upon the evidence of record, it is found that an equal amount of evidentiary weight exists, and pursuant to [West Virginia Code] § 23-4-1g, the resolution that is most consistent with claimant's position must be adopted. Accordingly, the weight of the evidence establishes the following: 1) a causal connection exists between the conditions under which [the decedent's] work was performed and her diagnosis of colorectal cancer; 2) her cancer followed as a natural incident of her work; 3) her cancer diagnosis can be fairly traced to her employment at [Carbide]; 4) the intensity and frequency of her chemical exposures at [Carbide] were unique to her employment, and her cancer diagnosis did not come from a hazard to which workmen would have been equally exposed outside of [Carbide]; 5) the occupational exposures which resulted in her colorectal cancer diagnosis were incidental to the nature of the chemical manufacturing and loading business and were not independent of the employer and employee relationship; and 6) her cancer diagnosis had its origin in a risk connected with her employment at [Carbide] and flowed as a natural consequence of her occupational exposures. [The decedent's] colorectal center was more likely than not causally related to her occupational exposures at [Carbide]. [The decedent] died as a result of colorectal cancer.

was barred pursuant to the doctrine of collateral estoppel, the Board determined the claim was not barred based upon the Supreme Court of Appeals of West Virginia's ("SCAWV") decision in *Staubs v. State Workmen's Compensation Comm'r*, 153 W. Va. 337, 168 S.E.2d 730 (1969). This appeal followed.

## II. STANDARD OF REVIEW

Our standard of review is set forth in W. Va. Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). With this standard in mind, we now turn to Carbide's arguments.

---

Therefore, [Mr. Dearien] is entitled to [dependent's] benefits. . . . The weight of the evidence establishes that [the decedent's] occupational exposures materially contributed to her death from colorectal cancer.

## III.  DISCUSSION

On appeal, Carbide argues that the doctrine of collateral estoppel bars Mr. Dearien's claim for dependent benefits as the CA's June 5, 2020, decision rejecting the decedent's living claim for occupational disease benefits was a final resolution of the issue of a causal connection between the decedent's diagnosis of colon cancer and her employment at Carbide.  We disagree.

Carbide's argument regarding collateral estoppel is two-fold. First, Carbide argues that the Board erred in relying upon *Staubs* for denying the applicability of collateral estoppel.  We agree.  The SCAWV's decision in *Staubs* was based upon the doctrine of res judicata, not collateral estoppel.  *See generally Staubs*, 153 W. Va. 337, 348-349, 168 S.E.2d 730, 736 (1969) ("As a ground for reversal the employer contends that the instant claim of the widow of Fred T. Staubs is barred by the doctrine of res judicata . . . .").  Collateral estoppel and res judicata are two separate doctrines of claim preclusion recognized in West Virginia.

In *State v. Miller*, 194 W. Va. 3, 9, 459 S.E.2d 114, 120 (1995), the SCAWV spoke particularly as to the differences between res judicata and collateral estoppel.  Specifically, the *Miller* Court found that

> the doctrines of *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related. *Res judicata* generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been

6

decided in the earlier action. A claim is barred by *res judicata* when the prior action involves identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment.

*Id.* at 9, 459 S.E.2d at 120 (1995) (internal citations omitted). Res judicata and collateral estoppel are different legal doctrines – the inapplicability of one does not preclude the applicability of the other. *See id.* Thus, while *Staubs* may eliminate the applicability of res judicata in the underlying case, it is not dispositive of the applicability of collateral estoppel to Mr. Dearien's claim for dependent benefits. Accordingly, a determination as to whether collateral estoppel precludes Mr. Dearien's dependent claims is necessary.

Carbide argues that the CA's June 5, 2020, decision is a final order on the merits, which would invoke the application of collateral estoppel and preclude the dependent benefit claim brought by Mr. Dearien. While, as noted above, the Board's reliance on *Staubs* was misplaced, we find that the Board did not err in its ultimate determination that Mr. Dearien's dependent claim was not barred by collateral estoppel. "[T]he doctrine of collateral estoppel, or issue preclusion, 'applies to issues that were actually litigated in an earlier suit even though the causes of action are different.'" *Corley v. Eastern Associated Coal Corp.*, No. 1:07CV114, 2009 WL 723120 at *5 (N.D.W.Va. March 18, 2009); citing *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 298-299, 359 S.E.2d 124, 131-132 (1987).

7

The doctrines of *res judicata* and collateral estoppel were developed in the context of judicial proceedings, but may be applied to administrative actions as well. Thus, the findings and conclusions of an administrative agency may be binding upon the parties in a subsequent proceeding if the agency that rendered the decision acted in a judicial capacity and resolved disputed issues of fact which the parties had an opportunity to litigate.

*Miller,* 194 W. Va. at 9, 459 S.E.2d at 120 (internal citations omitted); *see Liller v. West Virginia Human Rights Com'n*, 180 W. Va. 433, 440, 376 S.E.2d 639, 646 (1988);[6] *Vest v. Board of Educ. of County of Nicholas*, 193 W. Va. 222, 455 S.E.2d 781 (1995).[7]

Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final

---

[6] In *Liller,* the SCAWV noted

We have recognized that these doctrines can be applied to quasi-judicial determinations of administrative agencies. In order for preclusion to apply, the decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court of law.

*Id.* at 440, 376 S.E.2d at 646.

[7] In *Vest*, the SCAWV held

For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative *res judicata* or collateral estoppel.

Syl. Pt. 2, *Id.* at 223, 455 S.E.2d at 782.

8

> adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Miller,* 194 W. Va. at 9, 459 S.E.2d at 120. Carbide argues that the CA's June 5, 2020, order constitutes a final order on the merits and, thus, precludes Mr. Dearien's claims related to the decedent's diagnosis of colon cancer and the decedent's employment. We disagree. The CA's June 5, 2020, decision was not a quasi-judicial determination of an administrative agency. The CA's decision lacks the formalities, authority, and procedures substantially similar to those used in a court of law, as required under *Miller* and *Liller.*

In *Ruble v. Rust-Oleum*, 250 W. Va. 324, 902 S.E.2d 873 (2024), the SCAWV recently discussed the application of collateral estoppel in the context of whether an administrative decision in a workers' compensation case (involving third parties) could be applied to preclude litigation of the same claim in circuit court (against the third parties), to which the Court ruled it could not. While this factual scenario is different from the particular facts of the underlying case, we acknowledge that a number of the *Ruble* Court's findings are applicable to this case. Specifically, the *Ruble* Court concluded that "the workers' compensation process involve[s] legal standards and procedural rules that [a]re substantially different from those in a courtroom, . . ." *Id.* at 326, 902 S.E.2d at 875. The *Ruble* Court further concluded that workers' compensation administrative procedures were not an adequate substitute for judicial procedures in circuit court. The *Ruble* Court determined that

9

administrative procedures used in West Virginia workers' compensation proceedings made numerous accommodations to economy and celerity that are directly at odds with procedures in the circuit courts. West Virginia Code § 23-1-15 (2022) specifies that the workers' compensation process 'is not bound by the usual common-law or statutory rules of evidence[.]

*Id.* at 329, 902 S.E.2d at 878. Further, we recognize that the SCAWV has long held that a CA serves as an administrative factfinder who is not bound by the traditional rules operative to an adversary system. *See generally Meadows v. Lewis*, 172 W. Va. 457, 469, 307 S.E.2d 625, 638 (1983). It is important to note that CAs, in the context of workers' compensation, are insurance providers, not state administrative agencies. Based upon such facts and SCAWV precedent, we find that any determination of a CA is not a quasi-judicial determination to which the doctrine of collateral estoppel would apply.

Additionally, Carbide's argument that the CA's order is final and on the merits relies upon an alternative assertion that the August 27, 2021, order of the OOJ, which dismissed the decedent's protest to the CA's June 5, 2020, order, invokes application of collateral estoppel. While the August 27, 2021, order of the OOJ was an order of a then quasi-judicial administrative agency,[8] effectively sitting as a trial court, to which collateral estoppel could apply, Carbide mischaracterizes the OOJ's order as a final order on the

---

[8] We note that the OOJ was "terminated" by the West Virginia Legislature effective October 1, 2022, and the Board assumed the OOJ's role as the initial arbiter of protests of workers' compensation orders on July 1, 2022. *See* West Virginia Code §§ 23-5-8a, -8b, -10, and -10a (2022).

10

merits. The OOJ's August 27, 2021, order did not address the merits of the case and did not affirm the CA's determination. Rather, the August 27, 2021, order simply, in three sentences, dismissed the decedent's protest based upon her motion to withdraw her living claim given her death. At no point in the August 27, 2021, order did the OOJ address the issue of compensability, nor does that order address the issue of causation between the chemicals to which decedent was exposed while employed at Carbide and her diagnosis of colon cancer. We further note that when the OOJ was operational, the OOJ was the first level of the quasi-judicial administrative agencies in the workers' compensation administrative appeals process as the OOJ was not required to give deference to the CA determinations. *See* West Virginia Code § 23-5-9 (2021).[9] In contrast, in an appeal of an OOJ order to the Board, the Board was required to give deference to fact-finding and determinations made by the OOJ. *See* West Virginia Code § 23-5-12 (2021).[10]

The OOJ's dismissal of the decedent's living claim is analogous to a voluntary dismissal under Rule 41(a) of the Rules of Civil Procedure.[11] Under Rule 41(a)

---

[9] *See* West Virginia Code § 23-5-9(h) (2021), which states "[t]his section is of no force and effect after June 30, 2022."

[10] *See* West Virginia Code § 23-5-12(g) (2021), which states "[t]his section is of no force and effect after June 30, 2022."

[11] Rule 41(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that

> (a) Voluntary Dismissal . . . (2) By Court Order; Effect . . . an action may be dismissed at the plaintiff's request only by court order on terms that the court considers proper . . . Unless the

a voluntary dismissal is a dismissal without prejudice unless stated otherwise, which allows for a re-filing of the case without res judicata or collateral estoppel attaching to the issue or claim. Here, we find that the OOJ's August 27, 2021, dismissal order was a voluntary dismissal order, prior to any substantive rulings, and, thus, does not constitute a final adjudication on the merits. Therefore, we find that under the limited facts and circumstances of this case, neither the August 27, 2021, order of the OOJ, nor the CA's June 5, 2020, order satisfies the doctrine of collateral estoppel, as neither were a final adjudication on the merits of the case. Accordingly, we find no error in the Board's May 30, 2024, decision as to the non-applicability of collateral estopped to bar Mr. Dearien's dependent benefit claim.

Carbide further argues that the Board's May 30, 2024, decision was clearly wrong in view of the reliable, probative, and substantial evidence on the record. Again, we disagree. Carbide's argument is essentially a request for this Court to find the medical opinions submitted by Carbide be given more weight than those submitted by Mr. Dearien. Such a request is contrary to the credibility determinations made by the Board below and the express provisions of West Virginia Code § 23-4-1g,[12] which requires the Board to

order states otherwise, a dismissal under this paragraph (2) is without prejudice.

[12] West Virginia Code § 23-4-1g(a) provides, in pertinent part, that

[t]he process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality[,] and reliability that the evidence possesses in the

assess the credibility, materiality, and reliability that the evidence possesses and directs the Board that if "after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted." *See also Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility [plays] in factual determinations, a matter reserved exclusively for the trier of fact.")

The SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones[,] which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). Here, the Board found that credible and reliable medical evidence was submitted before the Board below, which was supported by both parties' arguments regarding the causal connection of the decedent's colon cancer diagnosis and her employment at Carbide. Further, the Board found that the medical opinions offered by Mr. Dearien and Carbide were equal in evidentiary weight and, therefore, the Board was required to adopt Mr. Dearien's position in accordance with

context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

West Virginia Code § 23-4-1g. With the deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in its weighing of the evidence in the record or in finding that collateral estoppel does not operate to preclude Mr. Dearien's dependent benefit claims.

## IV. CONCLUSION

For the foregoing reasons, we find the Board did not err in reversing the CA's determination and granting Mr. Dearien dependent benefits. Accordingly, the Board's May 30, 2024, order is hereby affirmed.

Affirmed.

14