455 S.E.2d 781

Barbara L. VEST, Plaintiff,

v.

The BOARD OF EDUCATION OF the COUNTY OF NICHOLAS, Defendant.

No. 22547.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided Feb. 17, 1995.

Mike Kelly, Charleston, for plaintiff.

Charles R. Bailey, Belinda B. Neal, Shuman, Annand & Poe, Charleston, for defendant.

Jeffrey G. Blaydes, James M. Haviland, Crandall, Pyles & Haviland, Charleston, for amicus curiae W. Va. Educ. Ass'n.

Paul R. Sheridan, Sr. Asst. Atty. Gen., Charleston, for amicus curiae W. Va. Human Rights Com'n.

CLECKLEY, Justice:

This case involves two questions certified to us by the United States District Court for the Southern District of West Virginia involving the authority of the West Virginia Education and State Employees Grievance Board (Grievance Board) to hear a gender-based discrimination claim.

## I.

### FACTS

The plaintiff, Barbara L. Vest, served as a substitute teacher at Summersville Junior High School in Nicholas County. The plaintiff asserts she was terminated from that position on the basis of pregnancy and sex. The plaintiff filed a grievance against the defendant, the Board of Education of the County of Nicholas, with the Grievance Board. At a level IV grievance hearing, the plaintiff presented evidence in support of her discrimination claim. However, in her post-hearing brief, the plaintiff voluntarily relinquished her claim upon her belief that it was not the proper forum to hear her discrimination claim. At the hearing, the plaintiff was not assisted by a lawyer, but was assisted by a "representative" as permitted by W.Va. Code, 18–29–3(f) (1985).[1] By decision dated May 20, 1992, the plaintiff's grievance was

---

1. W.Va.Code, 18–29–3(f), provides, in part: "An employee may have the assistance of one or more fellow employees, an employee organization representative or representatives, legal counsel or any other person in the preparation and presentation of the grievance." A "representative" is defined in W.Va.Code, 18–29–2(r) (1985), as "any employee organization, fellow employee, legal counsel or other person or persons designated by the grievant as the grievant's representative."

denied. The decision contained no conclusions of law with regard to the plaintiff's discrimination claim.[2]

Subsequently, on June 12, 1992, the plaintiff filed her discrimination claim with the United States Equal Employment Opportunity Commission (EEOC). According to the plaintiff, the EEOC determined there was probable cause under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and issued the plaintiff a Notice of Right to Sue on July 20, 1993. Thereafter, the plaintiff filed an action in the federal district court against the defendant under the Civil Rights Act and the West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.* The defendant filed a motion for summary judgment with the district court arguing the discrimination claim was barred by the doctrines of *res judicata* and collateral estoppel because of the plaintiff's previous hearing before the Grievance Board. The following questions then were certified to this Court:

1. "Does the West Virginia Education and State Employees Grievance Board ('Grievance Board') have subject matter jurisdiction over claims alleging discrimination because of gender-based discrimination?

2. "If the Grievance Board has such jurisdiction, is a civil action filed pursuant to the West Virginia Human Rights Act precluded by a prior grievance proceeding involving the same parties and arising out of the same facts and circumstances, but which did not result in any findings of fact or conclusions of law regarding the discrimination claim?"

After review, we answer the first certified question in the affirmative and the second certified question in the negative.

## II.

### GRIEVANCE BOARD'S SUBJECT MATTER JURISDICTION

■ The Legislature established the grievance procedure in W.Va.Code, 18–29–1,

et seq., to provide the State's education employees with "a simple, expeditious and fair process for resolving [employment] problems[.]" W.Va.Code, 18–29–1 (1992); *see Triggs v. Berkeley County Bd. of Educ.*, 188 W.Va. 435, 425 S.E.2d 111 (1992); *Fayette County Bd. of Educ. v. Lilly*, 184 W.Va. 688, 403 S.E.2d 431 (1991). Under W.Va.Code, 18–29–5(a) (1989), the Grievance Board is created and is directed to employ hearing examiners to conduct and decide level IV hearings, as provided in W.Va.Code, 18–29–4 (1992). W.Va.Code, 18–29–5(b) (1989), authorizes the hearing examiners to "provide such relief as is deemed fair and equitable in accordance with the provisions of [article twenty nine.]" Grievances, according to W.Va.Code, 18–29–2(a) (1992), may include claims by employees alleging "discrimination" in the application or interpretation of written rules or procedures, "discrimination" in the "application of unwritten policies or practices of the board, [and] any specifically identified incident of harassment or favoritism[.]" W.Va.Code, 18–29–2 (1992), also defines the following terms for purposes of article twenty-nine:

"(m) 'Discrimination' means any differences in the treatment of employees unless such differences are related to the actual job responsibilities of the employees or agreed to in writing by the employees.

"(n) 'Harassment' means repeated or continual disturbance, irritation or annoyance of an employee which would be contrary to the demeanor expected by law, policy and profession.

"(o) 'Favoritism' means unfair treatment of an employee as demonstrated by preferential, exceptional or advantageous treatment of another or other employees."

Thus, the Grievance Board, through its hearing examiners, has "jurisdiction" to de-

---

The language quoted from these sections is identical to the current versions enacted in 1992.

**2.** The plaintiff's claim was denied on the grounds she, *inter alia,* was not dismissed as a substitute, failed to establish her right to be retained in a specific position at the school, and failed to dem-

onstrate she had a fundamental property or liberty interest in her substitute assignment. On May 2, 1994, the Circuit Court of Kanawha County affirmed the level IV decision. The plaintiff's petition for appeal filed with this Court was denied on November 29, 1994.

cide grievances that include claims of discrimination, harassment, and favoritism which have the potential to overlap claims under the Human Rights Act. The latter prohibits discrimination in public and private employment on the basis of race, religion, color, national origin, ancestry, sex, age, blindness, or handicap. W.Va.Code, 5–11–9 (1992). The two statutes may, in a given case, provide alternative remedies to aggrieved persons. Obviously, a state educational employee who is denied a job benefit solely because of her gender would have a meritorious grievance based on either "discrimination" or "favoritism" and also would have a claim for relief under the Human Rights Act. Similarly, a victim of sexual harassment would be entitled to relief in a grievance that alleged "harassment"[3] and in a claim (administrative or judicial) under the Human Rights Act. *E.g., Westmoreland Coal Co. v. West Virginia Human Rights Comm'n,* 181 W.Va. 368, 382 S.E.2d 562 (1989). These overlapping remedies lead to issues, such as are presented in this case, where we must reconcile the goals of various statutory schemes with the policies[4] supporting the doctrines of claim and issue preclusion doctrines.

Clearly, the Grievance Board's authority extends only to resolving grievances made cognizable by its authorizing legislation, that is, those grievances recognized in W.Va. Code, 18–29–2. Just as certainly, there is no authority in the statute for the Grievance Board to decide whether a person states a claim under the Human Rights Act. In fact, W.Va.Code, 5–11–10 (1994), W.Va.Code, 5–11–11 (1989), and W.Va.Code, 5–11–13 (1983), commit interpretation and enforcement of the Human Rights Act to the Human Rights Commission and to the courts of this State. *Price v. Boone County Ambulance Auth.,* 175 W.Va. 676, 337 S.E.2d 913 (1985).

On the other hand, the Grievance Board can entertain grievances claiming that a particular employment action was the result of discrimination based on sex or any of the other prohibited motivations listed in the Human Rights Act. If a grieving employee can prevail on the claim that she has been the victim of "discrimination," "harassment," or "favoritism," it necessarily follows that the employee also can prevail by showing that the "discrimination," "harassment," or "favoritism," was motivated by sexual, racial, or some other invidious ground. Conversely, an employment decision that treats an employee differently because of the employee's race or gender, etc., is, by definition, not one that is "related to the actual job responsibilities of the [employee.]" W.Va.Code, 18–29–2(m).

For example, as a practical matter, a grievant who has persuasive evidence that sexual or racial bias entered into an employment decision may want to present such evidence at a grievance hearing both to prove "discrimination" and to rebut the employer's neutral or job-related explanation for its action. To hold that a grievant could not present evidence of an illicit motive to help prove "discrimination" just because such motive

---

3. We are aware that the Grievance Board in *Connor v. Barbour County Board of Education,* No. 93–01–154 (1994), a decision by an administrative law judge, has stated it has no jurisdiction to entertain sexual harassment claims. *See also Norton v. West Virginia Northern Community College,* No. 89–BOR–503 (1993). As should be clear from the ensuing discussion in the text, the *Connor* decision is correct to the extent that it holds the Grievance Board has no authority to decide whether an employer has violated the Human Rights Act. However, harassing treatment of an employee does not fall outside of "harassment" within the meaning of W.Va.Code, 18–29–2, simply because it is motivated by or related to the victim's sex. In a grievance under W.Va.Code 18–29–1, *et seq.,* an employee alleging harassment only needs to prove harassment. The motivation or nature of the harassment is irrelevant.

4. As we previously stated in *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 298, 359 S.E.2d 124, 131 (1987):

"[R]es judicata [or claim preclusion] serves to advance several related policy goals—(1) to promote fairness by preventing vexatious litigation; (2) to conserve judicial resources; (3) to prevent inconsistent decisions; and (4) to promote finality by bringing litigation to an end. *E.g., Pitsenbarger v. Gainer,* 175 W.Va. 31, 330 S.E.2d 840 (1985); *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983)."

Collateral estoppel or issue preclusion "is supported by the same public policy considerations as res judicata." 178 W.Va. at 299, 359 S.E.2d at 132, *citing Conley,* 171 W.Va. at 588, 301 S.E.2d at 220.

also is prohibited by the Human Rights Act would be both unfair to the grievant and inefficient for our administrative and judicial systems. It would be unfair to the grievant because it artificially would limit probative evidence relevant to discrimination. It would be inefficient because a grievance decision in favor of the grievant may, in many cases, end the controversy and preclude the need for further administrative or judicial proceedings under the Human Rights Act; and, it does so by a procedure that is much faster and less expensive.

Thus, the answer to the District Court's first certified question is in the affirmative. The Grievance Board does not have authority to determine liability under the Human Rights Act, W.Va.Code, 5–11–1, et seq.; nevertheless, the Grievance Board's authority to provide relief to employees for "discrimination," "favoritism," and "harassment," as those terms are defined in W.Va.Code, 18–29–2 (1992), includes jurisdiction to remedy discrimination that also would violate the Human Rights Act. In other words, the Grievance Board does have subject matter jurisdiction over gender-based discrimination claims—just as it has subject matter jurisdiction over any claim of discrimination, meaning employment decisions that are not based on job-related reasons or agreed to in writing by the employees. "Discrimination," "favoritism," and "harassment" in W.Va.Code, 18–29–2, comprise, *inter alia*, employment discrimination that *also* is prohibited by the Human Rights Act. Accordingly, we must proceed to answer the District Court's second certified question.

### III.

### CLAIM OR ISSUE PRECLUSION

■ We have held that for preclusion to attach to quasi-judicial determinations of ad-

ministrative agencies, at least where there is no statutory authority directing otherwise,[5] the prior "decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court[.]" *Liller v. West Virginia Human Rights Comm'n,* 180 W.Va. 433, 440, 376 S.E.2d 639, 646 (1988). In addition, "[t]he identicality of issues litigated is a key component to the application of administrative res judicata or collateral estoppel[.]" 180 W.Va. at 440, 376 S.E.2d at 646. Using that analysis, we find no preclusive effects to the Grievance Board's determinations over human rights claims.

■ First, there are not identical issues. As we stated above, a "discrimination" claim under W.Va.Code, 18–29–2(m), only need establish that the adverse employment decision was neither job related nor agreed to by the employees. Section 2(m) imposes no requirement for proving that the "discrimination" was caused by an illicit motive or was the result of a discriminatory policy having a disparate impact,[6] as would be the case under the Human Rights Act. *E.g., University of West Virginia v. Decker,* 191 W.Va. 567, 447 S.E.2d 259 (1994). Thus, claim preclusion would apply only if we were to hold that subsequent litigation by grievants of claims arising out of the same facts as their grievances is barred not only as to arguments actually litigated, but also as to those that could have been litigated in the grievance. *See* Syl. pt. 2, *Conley v. Spillers,* 171 W.Va. 584, 301 S.E.2d 216 (1983); *Lane v. Williams* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965). As we did in *Liller,*[7] *supra,* we refuse to impose such a bar on subsequent litigation

5. Nothing in either of the relevant statutes, W.Va.Code 5–11–1, *et seq.,* and W.Va.Code, 18–29–1, *et seq.,* expressly resolves the preclusion issues presented by the District Court's second certified question.

6. It is by no means certain that a disparate impact claim would be cognizable before the Grievance Board. Given our disposition of the certified questions presented and the fact this case did not involve such a claim, we need not address the issue here.

7. *Liller* involved the question whether a Deputy Sheriffs' Civil Service Commission's decision regarding a discharge precluded a subsequent human rights action concerning the same facts. We held that, because the civil service commission had not ruled on the employee's claim of pregnancy discrimination, her human rights claim could proceed.

under the Human Rights Act. Employees appearing before the Grievance Board may have legitimate reasons for not raising the more difficult and far more contentious issue of discriminatory motive, and because many grievants lack the assistance of a lawyer, they may not even recognize the potential for a human rights claim. By not imposing a collateral bar, we reinforce the Legislature's purpose in enacting W.Va.Code, 18–29–1, *et seq.*, of creating a simple and expeditious procedure for resolving employees' grievances.

The second reason that causes us to reject claim preclusion also persuades us that issue preclusion should not apply. The procedures employed by the Grievance Board are not substantially similar to those employed by either a court of law or the Human Rights Commission (Commission), and the differences are of profound significance. Thus, even if a grievance hearing examiner concludes that an employer's adverse action to a grievant was not "discriminatory," but was job related, that determination is not binding on a court or the Commission deciding a claim under the Human Rights Act—regardless of whether the grievant alleged or adduced evidence of discriminatory motive or disparate impact at the grievance hearing and regardless of whether the Grievance Board made a determination about such issues.

As noted above, the Legislature designed the grievance process to be simple and expeditious. Consequently, the process is streamlined and lacks many of the adversarial accoutrements found in judicial and Commission's proceedings. In the vast majority of grievances, for example, the grievant is not represented by a lawyer. Moreover, and more importantly, the grievance process does not provide for any of the discovery mechanisms available under the Rules of Civil Procedure and the Commission's procedural rules.[8] Finally, in stark contrast to the Human Rights Act, the grievance statute does not provide for the right to an independent investigation of each grievance filed before the Board,[9] does not make available at public expense representation by a lawyer for cases that proceed to a hearing before an administrative law judge,[10] and does not give employees the option of skipping the administrative process and pursuing their claims *de novo* in circuit court where jury trials and the full array of legal and equitable remedies are obtainable.[11]

The issues in a human rights case—especially unlawful motive and disparate impact—are extremely difficult and often complex. Invariably, they require substantial degrees of fact gathering and familiarity with the concepts of discrimination law. A grievant without a lawyer could not possibly be expected to grasp the significance of that law, put together a case of discrimination, and comprehend the full impact of claim and issue preclusion doctrines. A grievant with a lawyer would have an unfairly difficult task trying to prove illicit motive or disparate impact without access to the full panoply of discovery opportunities. The problem especially is apparent by the fact that in matters of motive and disparate impact the employer ordinarily possesses the crucial evidence. Thus, in the language of Syllabus Point 3, in part, of *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987), the plaintiff in this case was not "afforded a full and fair opportunity to litigate the matters in dispute[.]"

**8.** We note that in *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 300, 359 S.E.2d 124, 133 (1987), where we accorded preclusive effect to the decisions of the court of claims, we emphasized that the court of claims maintains procedural and discovery rules similar to those that govern our courts.

**9.** W.Va.Code, 5–11–10 (1994), directs the Commission to investigate all claims filed with it. *See Allen v. State Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99 (1984).

**10.** By virtue of W.Va.Code, 5–11–7 (1967), the State prosecutes all claims in which probable cause is found and in which the complainant is not represented by private counsel, and the Attorney General has a mandatory duty to furnish all legal services required by the Commission. *Allen, supra.*

**11.** *See* W.Va.Code, 5–11–13 (1983); *Price v. Boone County Ambulance Auth., supra.* Jury trials, of course, are not available in the administrative process; and, because of that fact, a complainant's recovery before the Commission is limited to equitable relief and may not include large awards for emotional distress or punitive damages. *Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 380 S.E.2d 238 (1989).

We stated in *Liller*, 180 W.Va. at 441, 376 S.E.2d at 647, "that where separate legislative enactments exist which provide separate administrative remedies, preclusive doctrines will not necessarily be applied. *See Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988); *Davis v. Kitt Energy Corp.*, 179 W.Va. 37, 365 S.E.2d 82 (1987); *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987)." Indeed, our cases require us to determine "whether applying the doctrines [of preclusion] is consistent with the express or implied policy in the legislation which created the body." Syllabus Point 3, in part, *Mellon–Stuart Co., supra*. In this case, we have W.Va.Code, 18–29–1, *et seq.*, a legislatively provided administrative remedy for state employees that is designed to assure them of a fast, easy-to-use, and inexpensive procedure for resolving the entire spectrum of legitimate employee complaints. We also have in the Human Rights Act a complex array of procedures and protections designed to give effect to the "civil right of all persons" to equal employment opportunity and to end the invidious discrimination that "is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society." W.Va.Code, 5–11–2 (1989). We think our answers to the certified questions best accommodate the different legislative goals that support the two statutes involved in this case.[12]

In so holding, we particularly remain mindful of the primacy that the Legislature has accorded to eliminating invidious discrimination in this State. As we stated in *Allen v. State Human Rights Commission*, 174 W.Va. 139, 149, 324 S.E.2d 99, 109 (1984), "[e]qual opportunity in this State is a fundamental principle" grounded in several provisions of our State Bill of Rights. "[E]very act of unlawful discrimination in employment . . . is akin to an act of treason, undermining the very foundations of our democracy." 174 W.Va. at 148, 324 S.E.2d at 108. The sense of betrayal is even greater when the discriminator is, as alleged in this case, a public servant. We cannot allow the substantial protections promised by the Human Rights Act from such assaults on our personal and institutional integrities to be compromised by unthinking adherence to technical doctrines. If we permit public employers to use prior decisions rendered by a loose administrative apparatus—engaged in by unwary and often uncounseled employees and lacking important procedural rudiments—to preclude victims of discrimination from subsequently invoking the promises made by the Human Rights Act, we, thereby, would add our own breach of trust to those already committed by public discriminators. Thus, we refuse to so hold.[13]

We, therefore, find it unnecessary to resolve the dispute between the parties in the present case as to whether the plaintiff "actually litigated" her discrimination claim before the Grievance Board.[14] Accordingly, our response to the District Court's second certified question is negative. A civil action filed under the Human Rights Act is not

---

12. We note that the United States Supreme Court has reached similar conclusions in order to give full effect to Congress's purposes in enacting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. E.g., University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (a judicially unreviewed state administrative decision on a claim of race discrimination does not bar subsequent Title VII litigation of the same claim); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (a grievance decision applying an anti-discrimination provision in a collective bargaining agreement does not preclude subsequent Title VII litigation on the same set of facts).

13. Our statements in the text, of course, should not be construed to express any opinion on the merits of the plaintiff's charges of discrimination

in this case. Rather, we merely hold that the Human Rights Act entitles her to a full and complete opportunity to prove those allegations before the Commission or a trial court.

14. As noted above, at the level IV grievance hearing the plaintiff presented evidence on discrimination, but then "relinquished" the claim in her post-hearing brief before the issue was decided. *Liller* would seem to dictate a finding that the Grievance Board's decision, therefore, would not preclude a subsequent Human Rights Act complaint. The issue in *Liller* was whether a decision of a civil service commission should be given preclusive effect. We concluded that "where the issue of sex discrimination *has not been decided* by a deputy sheriff civil service commission, the involved deputy is not foreclosed from filing a complaint with the human rights

precluded by a prior grievance decided by the Grievance Board arising out of the same facts and circumstances. The grievance procedures and the Human Rights Act provide enforcement mechanisms to accomplish different legislative purposes and neither preempts the other.[15]

## IV.

### CONCLUSION

For the foregoing reasons, we find the West Virginia Education and State Employees Grievance Board has subject matter jurisdiction over any claim of discrimination, and a civil action filed under the Human Rights Act is not precluded by such a prior grievance which involves the same facts and circumstances. The certified questions answered, this case is dismissed.

Answered and dismissed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.

---

commission." 180 W.Va. at 441, 376 S.E.2d at 647. (Footnote omitted; emphasis added). *See also* 180 W.Va. at 441 n. 16, 376 S.E.2d at 647 n. 16 (citing cases under federal civil rights law reaching the same conclusion); *cf. Wilfong v. Chenoweth Ford, Inc.,* 192 W.Va. 207, 451 S.E.2d 773 (1994).

15. We emphasize, however, that employees can recover only once for each injury. Thus, for example, if the Grievance Board awards backpay to a discharged employee who later, based on the same set of facts, prevails on a Human Rights claim, the grievance award would be set off against the employee's recovery under the Human Rights Act.