478 S.E.2d 357

**Blanche L. ASAAD, M.D., Plaintiff Below, Appellant,**

v.

**RES-CARE, INC., fka Res–Care Health Services, Inc., a Foreign Corporation; and John Brislin, Defendants Below, Appellees.**

No. 23278.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Oct. 11, 1996.

Timothy F. Cogan, Patrick S. Cassidy, Cassidy, Myers, Cogan, Voegelin & Tennant, Wheeling, for Appellant.

Larry W. Blalock, Whitney G. Clegg, Jackson & Kelly, Charleston, for Appellees.

PER CURIAM:

The appellant herein and the plaintiff below, Blanche L. Asaad, M.D., appeals a final order of the Circuit Court of Pleasants County granting summary judgment to the appellees herein and the defendants below, Res–Care, Inc., formerly known as Res–Care Health Services, Inc., a foreign corporation, and John Brislin. The circuit court found as a matter of law that the doctrine of collateral estoppel precluded the plaintiff's action against the defendants for tortious interference with an employment relationship. For the reasons set forth, we reverse and remand.

I.

The facts of this case begin with the plaintiff's employment in October of 1988, as the clinical director of the Colin Anderson Center (CAC). The record indicates CAC is operated by the State through the Division of Health (DOH) for the purpose of providing care to mentally retarded and developmentally disabled individuals.[1] The plaintiff's employment status was that of a State civil service employee.[2] In 1989, DOH turned over direct management of CAC to the defendant Res–Care, Inc., a private corporation.[3] In turn, Res–Care hired the defendant

1. DOH is a part of the Department of Health and Human Resources. *See* W. Va.Code, 5F–2–1(d)(3) (1995).

2. The plaintiff's job duties included supervising and coordinating the work of four full-time physicians and several part-time physicians and assessing the quality of care provided to patients.

3. The defendant Res–Care, Inc., is a private enterprise. The record indicates this defendant was asked to take over direct management of

John Brislin to be the chief administrative officer of CAC. DOH's arrangement with the defendants meant both public and private employees would staff CAC.

Shortly after the defendants began operating CAC, they hired a nurse for the newly created position of "director of clinical services" to do many of the administrative tasks that came under the plaintiff's job description. In time, the plaintiff wrote a letter to the director of DOH, wherein she complained the defendants had allowed the quality of patient care to decline [4] and that the hiring of a nurse to be a director of clinical services was contrary to statutory law.[5] The plaintiff alleged that, as a result of her complaints to the director of DOH and other State officials, the defendants retaliated against her in various ways.[6]

On August 31, 1990, the plaintiff was terminated by DOH from her employment with CAC upon a recommendation by the defendants that her position was no longer needed due to downsizing initiatives by the defendants. The plaintiff filed a grievance with the West Virginia Education and State Employees Grievance Board ("Grievance Board") against DOH as a result of her termination. The plaintiff alleged in the grievance that DOH wrongfully terminated her in retaliation for the complaints she made regarding the deteriorating care at CAC. While the administrative grievance proceeding was taking its course, the plaintiff filed the instant action against the defendants in circuit court.[7] The record indicates the circuit court case was stayed pending the outcome of the administrative grievance proceeding. On October 9, 1991, the administrative law judge issued her ruling wherein she found that DOH properly terminated the plaintiff due to downsizing at CAC.[8] The plaintiff appealed the administrative law judge's decision to the circuit court. By order entered December 2, 1993, the circuit court affirmed the administrative law judge's decision. The plaintiff did not appeal the circuit court's ruling.

The stay that was in place in the instant matter was lifted after the circuit court's ruling on the plaintiff's administrative grievance against DOH. The defendants shortly thereafter moved for summary judgment in the instant matter. One of the grounds the defendants alleged for their summary judgment motion was that of collateral estoppel. The defendants contended the issue of why the plaintiff was terminated was litigated before the administrative law judge, including the defendants' alleged role in causing the termination. Therefore, the defendants asserted the plaintiff was precluded from relitigating the matter. The circuit court agreed with the defendants that collateral estoppel prevented the plaintiff from going further with her suit and granted summary

CAC, as a result of a consent decree in the case of *E.H. v. Matin*, Civil Action No. 81–Misc–585 (Kanawha County 1986). The consent decree called for reorganizing and downsizing CAC.

4. Some of the complaints made by the plaintiff included the following: (1) maggots were found in a patient's wheelchair; (2) a medically fragile elderly patient was transported to another facility for testing in such a manner that caused him to become ill; (3) a wheelchair-bound patient was not weighed weekly as required; (4) electrical problems existed at the facility; (5) general sanitation was bad, e.g., dead insects were found throughout the facility; and (6) the infirmary was understaffed. The plaintiff also complained of the deteriorating conditions to State Senators Donna Boley, Larry Tucker, Larry Wiedebusch, Keith Burdette, and Thais Blatnik.

5. W. Va.Code, 27–1–7(b) (1992), provides in relevant part: "The clinical director must be a physician duly licensed to practice medicine[.]"

While not an issue before this Court, the defendants allege they are able to get around the above statute because they are no longer a medical facility but are deemed to be a training facility.

6. The plaintiff alleged Mr. Brislin "chewed her out," "yelled at her like a preschooler," "humiliated her in front of her subordinates," "canceled her parking space," and "ignored her medical advice."

7. The cause of action against the defendants was that of tortious interference with an employment contract. DOH was not a party to the civil litigation filed in circuit court.

8. The administrative law judge concluded the plaintiff was terminated because she had the least seniority among physicians on staff at CAC. The administrative law judge specifically ruled that DOH was not retaliating against the plaintiff when it fired her.

judgment to the defendants.[9] This appeal followed.

The issue before this Court is whether the doctrine of collateral estoppel was correctly applied in this case. The determination of whether the plaintiff could withstand summary judgment on the merits of her claim is not before this Court.

## II.

This Court reviews *de novo* a circuit court's entry of summary judgment. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Because appellate review of an entry of summary judgment is plenary, this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. An appellate court is not restricted to the circuit court's reasoning but can affirm or reverse the entry of summary judgment on any independently sufficient ground. In the end, the entry of summary judgment can be upheld only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *See* Syl. Pt. 2. *Painter v. Peavy, supra* (" ' "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buck-*

hannon, 187 W.Va. 706, 421 S.E.2d 247 (1992)").

▪ A close analysis of our decisional law is essential to determine the applicability of the doctrine of collateral estoppel to the pending action. As we previously stated in *Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 298, 359 S.E.2d 124, 131 (1987):

"[R]es judicata [or claim preclusion] serves to advance several related policy goals— (1) to promote fairness by preventing vexatious litigation; (2) to conserve judicial resources; (3) to prevent inconsistent decisions; and (4) to promote finality by bringing litigation to an end. E.g., *Pitsenbarger v. Gainer*, 175 W.Va. 31, 330 S.E.2d 840 (1985); *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983)."

Collateral estoppel or issue preclusion "is supported by the same public policy considerations as res judicata." *Mellon–Stuart*, 178 W.Va. at 299, 359 S.E.2d at 132, citing *Conley*, 171 W.Va. at 588, 301 S.E.2d at 220. In Syllabus Point 1 of *Haba v. The Big Arm Bar and Grill, Inc.*, 196 W.Va. 129, 468 S.E.2d 915 (1996), we indicated:

" 'Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.' Syllabus Point 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995)."

We also held in Syllabus Point 2 of *Miller*:

"Relitigation of an issue is not precluded when a new determination of the issue is

---

**9.** The circuit court's order stated:

"The underlying issue of Res–Care and Brislin's alleged unlawful and retaliatory motive for recommending the abolishment of plaintiff's position and her lay-off in its Reorganization Plan ... was considered and rejected by the Hearing Examiner. The Hearing Examiner further ruled that the abolishment of Plaintiff's position resulted from the fact that there existed under the Reorganization Plan 'no need for a physician clinical director' and that Plaintiff was properly layed-off as the 'least senior physician.' Therefore, because plaintiff

cannot challenge the ... Hearing Examiner's rulings to the effect that the personnel changes recommended by Brislin and Res–Care, and which resulted in plaintiff's lay-off, were made free of any unlawful or retaliatory motive, the plaintiff cannot as a matter of law prevail on her claim. The issue of Res–Care and Brislin's motive in regard to their treatment of the Plaintiff was the gravamen of Plaintiff's grievance, which was denied. She is therefore precluded from proceeding herein on that same theory of recovery."

warranted by differences in the quality or extensiveness of the procedures followed in two courts. Where the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims, a compelling reason exists not to apply collateral estoppel."

Finally, in Syllabus Point 2 of *Vest v. Board of Education of the County of Nicholas,* 193 W.Va. 222, 455 S.E.2d 781 (1995), we held:

"For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative res judicata or collateral estoppel."

With the above principles of law in view, we begin our analysis.

▮ The evidence in this case indicates the defendants were not parties to the administrative grievance proceeding the plaintiff filed against DOH. Pursuant to the applicable administrative grievance statute in this case, W.Va.Code, 29–6A–2(g) (1988), an employer is defined as "that state department, board, commission or agency utilizing the services of the employee[.]" Further, the subject matter over which the grievance board has jurisdiction is narrowly circumscribed under the term "grievance," which is defined under W.Va.Code, 29–6A–2(i) (1988) to mean:

"[A]ny claim by one or more affected state employees alleging a violation, a misapplication or a misinterpretation of the statutes, policies, rules, regulations or written agreements under which such employees work, including any violation, misapplication or misinterpretation regarding compensation, hours, terms and conditions of employment, employment status or discrimination; any discriminatory or otherwise aggrieved application of unwritten policies or practices of their employer; any specifically identified incident of harassment or favoritism; or any action, policy or practice constituting a substantial detriment to or interference with effective job performance or the health and safety of the employees.

"Any ... other matter in which authority to act is not vested with the employer shall not be the subject of any grievance filed in accordance with the provisions of this article."

The plaintiff could not litigate her claim of tortious interference with an employment contract against the defendants in the administrative proceeding because the defendants (1) were not her employers and thereby were not subject to the jurisdiction of the Grievance Board, and (2) her claim against the defendants was not subject to the jurisdiction of the Grievance Board—only DOH and plaintiff's allegation against it were subject to such jurisdiction. Consequently, if she wished to proceed directly against the defendants, the plaintiff had to litigate her claim against them in civil court. The plaintiff did this by filing the instant action while the administrative proceeding actually still was pending.

The record indicates the plaintiff argued in the administrative proceeding that the defendants recommended terminating her as a retaliatory measure for her previous complaints. The defendants here argue that merely because the plaintiff made such an assertion in the administrative proceeding she is precluded from carrying on the instant claim. This argument is not distinguishable from that made in *Harrison County Board of Education v. Carson–Leggett,* 195 W.Va. 596, 466 S.E.2d 447 (1995) (per curiam). In *Carson–Leggett,* the appellant filed a grievance with the Grievance Board alleging sex discrimination charges against the appellee. Subsequent to an adverse decision by the Grievance Board, the appellant filed the same claim against the appellee with the State Human Rights Commission. The appellee filed an action in circuit court for injunctive relief seeking to block the proceeding that was before the State Human Rights Commission under the theory of collateral estoppel. The circuit court granted the relief requested. In reversing the circuit court's decision, this Court in *Carson–Leggett,* 195

W.Va. at 600, 466 S.E.2d at 451. relied upon language from our ruling in *Vest*:

"As Justice Cleckley, in *Vest*, eloquently stated:

" 'We cannot allow the substantial protections promised by the Human Rights Act from such assaults on our personal and institutional integrities to be compromised by unthinking adherence to technical doctrines. If we permit public employers to use prior decisions rendered by a loose administrative apparatus—engaged in by unwary and often uncounseled employees and lacking important procedural rudiments—to preclude victims of discrimination from subsequently invoking the promises made by the Human Rights Act, we, thereby, would add our own breach of trust to those already committed by public discriminators. Thus, we refuse to so hold. 193 W.Va. at 228, 455 S.E.2d at 787. *See also Liller v. Human Rights Commission*, 180 W.Va. 433, 376 S.E.2d 639 (1988); *Davis v. Kitt Energy Corp.*, 179 W.Va. 37, 365 S.E.2d 82 (1987).' "

In *Vest*, which involved certified questions from the United States District Court for the Southern District of West Virginia, we held:

"A civil action filed under the Human Rights Act is not precluded by a prior grievance decided by the Grievance Board arising out of the same facts and circumstances. The grievance procedures and the Human Rights Act provide enforcement mechanisms to accomplish different legislative purposes and neither preempts the other." 193 W. Va. at 228–29, 455 S.E.2d at 787–88.

In the instant proceeding, the defendants contend the plaintiff is precluded from bringing this matter in circuit court merely because she mentioned in the Grievance Board proceeding that the defendants recommended terminating her as a retaliatory measure for her previous complaints. In view of our holdings in *Vest* and *Carson–Leggett*, the defendants' argument is lukewarm at best. The assertion made by the plaintiff before the Grievance Board appears to have been nothing more than a supportive argument for her main contention in the administrative proceeding, i.e., DOH terminated her as a retaliatory measure. No searching discovery was conducted against the defendants for the purpose of the administrative proceeding against DOH. What little evidentiary development that took place was concentrated on DOH's role in terminating the plaintiff.

The administrative law judge ruled that DOH acted according to law in terminating the plaintiff. Does this finding mean the defendants did not engage in any tortious conduct that interfered with the plaintiff's employment contract with DOH? This question was not properly before the administrative law judge. The administrative law judge was concerned with wrongful conduct by DOH. Had DOH engaged in wrongful conduct that led to the plaintiff's firing, a remedy could have been imposed by the administrative law judge. On the other hand, if the plaintiff had proven the defendants engaged in tortious conduct to cause DOH to terminate her, the administrative law judge could not provide a remedy against the defendants for their actions. It is precisely for this reason that the plaintiff filed the instant matter while the administrative proceeding was ongoing. If DOH's hands were clean, so to speak, did not automatically mean the defendants' hands were clean. And, too, merely alleging, without more, that the defendants' wrongfully interfered with her employment relationship does not constitute an aggressively and fairly litigated issue, such that the plaintiff should be precluded from raising the issue in a civil suit. The administrative proceeding was nothing more than a "prompt, inexpensive determination" of DOH's role in bringing about the plaintiff's termination.

The plaintiff has not hauled DOH into this litigation. She could not. By not appealing further the administrative ruling in favor of DOH, the plaintiff gave up all claims she may have against DOH. She has now turned to the parties who could not be prosecuted in the administrative proceeding. The defendants, however, now seek to penalize the plaintiff for something she could not control, i.e., naming the defendants as parties in her administrative proceeding. The law would take a curious turn for the worse, indeed, if we allowed this situation to manifest itself as the law in this State. We refused to do so in

*Vest* and *Carson–Leggett,* and we stand fast to that position in the instant matter.

It is not difficult to imagine what would become of the effectiveness of the rights embodied in civil service, if collateral estoppel was allowed to bar claims like that of the plaintiff. State agencies could bring in private managers to operate any agency. The private manager could then indiscriminately eviscerate the employment rights of State employees, by making adverse employee recommendations to State officials who, in turn, adopt the same. The State officials could escape blame during an administrative grievance proceeding by pointing to the independent decisions made by the private manager, who could not be held accountable in the administrative proceeding. Any claim the State employee might have against the private manager for its role in the adverse decision would be effectively barred from being litigated in civil court due to collateral estoppel. This scenario, we think, is "a compelling reason" to question application of collateral estoppel in the instant proceeding. It works an exceedingly harsh consequence. A consequence that we will not allow to occur.

For the foregoing reasons the summary judgment order entered in the Circuit Court of Pleasants County is reversed and this case remanded.

Reversed and remanded.