No. 22-0480, *SER Gabriel Devono & The Board of Education of Randolph Co. v. Hon. David H. Wilmoth, Judge of the Circuit Court of Randolph Co., Sherman Arbogast & Marlene Arbogast*

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Walker, C.J. dissenting, in part, and concurring, in part.

Ms. Arbogast is a former "employee"[1] of the Board of Education of Randolph County.[2] She has brought claims in circuit court against the Board and its former superintendent, Mr. Devono, stemming from the termination of her employment. The Legislature has provided an administrative remedy for claims like Ms. Arbogast's—the prosecution of a "grievance," as defined in West Virginia Code § 6C-2-1(i) (2023), before the West Virginia Public Employees Grievance Board.[3] "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act."[4] Because the Legislature has provided Ms. Arbogast with an administrative remedy for her claims of wrongful and retaliatory

---

[1] Ms. Arbogast satisfies the definition of "employee" found in West Virginia Code § 6C-2-2(e)(1) (2023) ("'Employee' means any person hired for permanent employment by an employer for a probationary, full- or part-time position.").

[2] *See* W. Va. Code § 6C-2-2(g) (defining "employer" to mean a "county board of education," among other entities).

[3] *See* W. Va. Code §§ 6C-2-1 to 8 ("West Virginia Public Employees Grievance Procedure").

[4] Syl. Pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 143 W. Va. 674, 104 S.E.2d 320 (1958).

1

discharge (Counts III, IV, and V), she is bound to exhaust her remedies before the Grievance Board before turning to the circuit court for relief .[5]  Ms. Arbogast has not done that.  So, she has failed to "satisfy the jurisdictional prerequisite to resort to the courts;"[6] the circuit court lacks jurisdiction over Counts III, IV, and V of the amended complaint; and the circuit court should have dismissed those claims under West Virginia Rule of Civil Procedure 12b)(1).[7]

## Count III

The majority concludes that the circuit court may exercise jurisdiction over Count III because, there, Ms. Arbogast has alleged that she was "wrongfully discharged in violation of the Whistle-[B]lower Law, West Virginia Code §§ 6C-1-1 to -8." The majority then reasons that West Virginia Code § 6C-1-4(a) (2020) "clearly and unambiguously

---

[5] *See Ragione v. Bd. of Educ. of Preston Cnty.*, No. 17-0037, 2018 WL 300576, at *3 (W. Va. Jan. 5, 2018) (affirming dismissal of breach of contract, fraudulent inducement, civil conspiracy, and unjust enrichment claims where plaintiff failed to appeal adverse level-three Grievance Board decision); *Redd v. McDowell Cnty. Bd. of Educ.*, No. 15-0566, 2016 WL 2970303, at *4 (W. Va. May 20, 2016) (affirming dismissal of claims that board of education had violated "various state statutes governing the management of school personnel" where plaintiff failed to appeal adverse level-three Grievance Board decision); *Subramani v. W. Va. Univ. Bd. of Governors*, No. 14-0924, 2015 WL 7628720, at *6 (W. Va. Nov. 20, 2015) (affirming dismissal of professor's employment-related claims where he failed to exhaust administrative remedies); *see also Vest v. Bd. of Educ. of Cnty. of Nicholas*, 193 W. Va. 222, 224–25, 455 S.E.2d 781, 783–84 (1995) (stating that "the Grievance Board, through its hearing examiners, has 'jurisdiction' to decide grievances").

[6] *Daurelle*, 143 W. Va. at 682, 104 S.E.2d at 326.

[7] I concur with the majority that the circuit court should have dismissed Counts I, II, and VII.

provides that a person claiming to be a victim of retaliatory action as a result of being a whistle-blower may institute a civil action in a court of competent jurisdiction."[8] So, according to the majority, Ms. Arbogast was not bound by the common law to seek relief for the harm alleged in Count III before the Grievance Board before turning to the circuit court.

I disagree with the first step of the majority's analysis—Count III is not a claim for relief under the Whistle-Blower Law that the Legislature has exempted from "the jurisdictional prerequisite" of exhaustion of administrative remedies before the Grievance Board. In Count III, Ms. Arbogast alleges that (1) she reported the pre-K teacher's alleged wrongdoing to the School Board and Mr. Devono; (2) Mr. Devono engaged in a malicious "pattern of conduct to cover-up the mistreatment and abuse of students and to create bogus reasons to discharge [Ms. Arbogast] as punishment for [Ms. Arbogast] informing him of the wrongdoing of [the pre-K teacher];" (3) Mr. Devono got others to do the same in furtherance of the termination of Ms. Arbogast's employment; and (4) Mr. Devono and the Board terminated her employment in violation of the Whistleblower Act, the Human Rights Act, and the Board's policy prohibiting discharge and retaliation for the good faith reporting of wrongdoing.

---

[8] *See* W. Va. Code § 6C-1-4(a) (2020) ("A person who alleges that he or she is a victim of a violation of this article may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within two years after the occurrence of the alleged violation.").

From those allegations, the majority summarily concludes that Ms. Arbogast alleges a claim for wrongful discharge in violation of the Whistle-Blower Law under West Virginia Code § 6C-1-4(a). Despite Ms. Arbogast's invocation of the Human Rights Act and Board policy in that count—as well as the Whistle-Blower Act—I could go along with that conclusion based on the title of the claim alone: "Wrongful Discharge in Violation of Whistleblower Statute." But the substance of a claim does not depend solely on its title, and a careful review of the allegations in Count III demonstrates that it is nothing more than a claim for wrongful discharge, i.e., a "grievance" under § 6C-2-2(i)(1), that must be taken to the Grievance Board.

Ms. Arbogast claims that Mr. Devono's and the Board's wrongful actions violated "the West Virginia Human Rights Act, Whistle Blower Statute and *other substantial public policy* . . . ."[9] Ms. Arbogast's invocation of "substantial public policy" signals that Count III is something *other than* a claim under West Virginia Code § 6C-1-4(a).[10] Ms. Arbogast also seeks relief beyond that afforded by the Legislature for violations of the Whistle-Blower Law—again, a signal that Count III is something *other than* a claim under West Virginia Code § 6C-1-4(a). The Whistle-Blower Law grants specific remedies to the successful complainant:

---

[9] Emphasis added.

[10] *Cf.* Syl., in part, *Harless v. First Nat. Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978) (holding that "where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge").

[a] court, in rendering a judgment for the complainant in an action brought under this article, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.[11]

Despite the Legislature's clear articulation of remedies available under the Whistle-Blower Act, Ms. Arbogast seeks damages for "emotional stress, embarrassment, humiliation, damage to her reputation, lost wages, and annoyance and inconvenience," present and future. That Ms. Arbogast seeks relief beyond that afforded by the Whistle-blower Act is another signal that Count III is something *other than* a plea for relief under the Whistle-Blower Act. Of course, the next question is, "What is Ms. Arbogast really claiming in Count III if not a violation of West Virginia Code § 6C-1-4(a)?" The answer? A common law, wrongful discharge claim—a "grievance" under West Virginia Code § 6C-2-1(i)(1)(v) subject to exhaustion requirements.

**Counts IV and V**

---

[11] W. Va. Code 6C-1-5 (1998); *see also* Syl. Pt. 1, *Thompson v. Town of Alderson*, 215 W. Va. 578, 600 S.E.2d 290 (2004) ("The remedies set forth in the Whistle–Blower Law, W.Va.Code, 6C–1–1, et seq. [1988] are reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate. The issue of ordering reinstatement for a prevailing plaintiff is an equitable decision committed to the sound discretion of the trial judge, and not the jury.").

I also disagree with the majority's conclusion that Counts IV ("Retaliatory Discharge in Violation of First Amendment Right to Free Speech") and V ("Wrongful Discharge in Violation of Constitutional Right to Retain Counsel, Seek Access to Courts and for a Jury Trial")[12] are *not* grievances.[13] Like Count III, Counts IV and V are common law, wrongful discharge claims that Ms. Arbogast was bound to take to the Grievance Board before resorting to circuit court. Those claims aren't transformed into something other than that simply because Ms. Arbogast invokes the federal constitution.

Ms. Arbogast alleged in Count IV that (1) she reported a matter of public concern to Mr. Devono; (2) Mr. Devono retaliated against her for exercising her speech rights under the First Amendment by fabricating grounds to terminate her employment; and (3) Mr. Devono and the Board terminated Ms. Arbogast's employment in retaliation for exercising her First Amendment rights. And in Count V, Ms. Arbogast alleged that (1) she has constitutionally protected rights to obtain counsel and seek redress in the courts;

_____

[12] The majority treats these claims as if both alleged violations of Ms. Arbogast's First Amendment speech rights. That is not accurate. In Count V, Ms. Arbogast alleges that defendants violated her Sixth Amendment right to obtain counsel. Subject to few exceptions, that right arises in criminal proceedings, only. *See* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.").

[13] The majority specifically concludes that "the circuit court did not err in denying the petitioners' motion to dismiss counts four and five pursuant to Rule 12(b)(1)." To get there, the majority necessarily had to conclude that Couns IV and V were *not* "grievances"—otherwise, the Public Employee Grievance Board has authority to resolve those claims, not the circuit court.

6

(2) Mr. Devono and the Board interfered with her efforts to secure counsel; (3) Mr. Devono fabricated reasons for the termination of her employment to punish her for attempting to exercise constitutionally protected rights; and (4) Mr. Devono and the Board wrongfully terminated Ms. Arbogast's employment because she exercised constitutionally protected rights.

The Grievance Board has dealt with employees' claims that an adverse employment action violated their First Amendment rights or that the adverse action was taken in retaliation for the exercise of rights guaranteed by the First Amendment. In *Alderman v. Pocahontas County Board of Education*,[14] a vice principal grieved the termination of his employment of grounds of insubordination, arguing that messages he posted to a public website maligning the school board's treasurer and the county superintendent were speech protected by the First Amendment. The Grievance Board found that the vice principal's statements were not protected speech, and so denied his grievance. The circuit court reversed the Grievance Board, and this Court reversed the circuit court, reinstating the Grievance Board's rejection of the vice principal's claim to First Amendment protections. In *Reed v. West Virginia State Police*, this Court affirmed the circuit court's order affirming the Grievance Board's order denying a state trooper's grievance, despite the trooper's contention that the at-issue posts to his personal Facebook

---

[14] *Alderman v. Pocahontas Cnty. Bd. of Educ.*, 223 W. Va. 431, 675 S.E.2d 907 (2009).

page were protected speech.[15]  In *Jarrell v. New River Community and Technical College.*, this Court affirmed the circuit court's order affirming the Grievance Board's denial of the employee's grievance, despite the employee's assertion "that her contract was not renewed as retaliation for her questioning of NRCTC's vice-president at a faculty senate meeting" but where the Grievance Board found the employee's allegedly protected activities were not protected by the First Amendment.[16]  In *Smith v. West Virginia Workers' Compensation Fund*, this Court reversed the circuit court's order reversing the Grievance Board's denial of claims investigators' grievances where the "hearing examiner ultimately found that the [claims investigators] had failed to establish a prima facie case of political discrimination."[17]  In *Watson v. West Virginia Department of Health and Human Services*, this Court affirmed the circuit court's order reversing the Grievance Board's order granting the employee's grievance where the Grievance Board had incorrectly determined that employee's First Amendment rights were violated when he was disciplined for failing to

---

[15] *Reed v. W. Va. State Police*, No. 15-0598, 2016 WL 2970305 (W. Va. May 20, 2016).

[16] *Jarrell v. New River Cmty. & Tech. Coll.*, No. 101403, 2011 WL 8183123, at *3 (W. Va. Sept. 23, 2011) ("'[B]ickering and running disputes with the department heads" do not come within First Amendment protection.'") (quoting *Chitwood v. Feaster*, 468 F.2d 359, 360–1 (4th Cir. 1972)).

[17] *Smith v. W. Va. Workers' Comp. Fund*, 190 W. Va. 573, 575, 439 S.E.2d 438, 440 (1993) ( "dismissal of a non-civil service employee is improper and thus violates one's first amendment rights when made for political patronage reasons").

abide by his employer's directive not to communicate with coworkers during an internal investigation.[18]

Despite that authority, the majority follows Ms. Arbogast's lead to *Orr v. Crowder*[19] and *Corbett v. Duerring*.[20] The majority is correct that an allegedly wronged public employee sought to vindicate First Amendment rights in those cases. But the majority is not correct that those cases affect the ultimate question of whether the circuit court may exercise jurisdiction over Counts IV and V of Ms. Arbogast's complaint for several reasons. First, in *Orr* and *Corbett*, the allegedly wronged public employees pursued relief under 42 U.S.C. § 1983 for alleged violations of their First Amendment rights. Those cases don't include a discussion of the exhaustion of administrative remedies. The majority takes that absence and runs with it, implicitly concluding that the § 1983 claims (First Amendment) brought by the public employees in those cases are not subject to administrative exhaustion requirements,[21] so Ms. Arbogast's common law, wrongful discharge claims aren't, either.[22]

---

[18] *Watson v. W. Va. Dep't of Health & Hum. Res.*, No. 11-0191, 2012 WL 2924123, at *6 (W. Va. Jan. 19, 2012).

[19] 173 W. Va. 335, 315 S.E.2d 593 (1983).

[20] 780 F.Supp.2d 486 (S.D. W. Va. 2011).

[21] The majority cites no law to support this reasoning.

[22] This even though this Court limited the holding in *Orr* to § 1983 claims:

The majority's analysis shortchanges the meaningful differences between Claims IV and V in Ms. Arbogast's amended complaint and the § 1983 claims at issue in *Orr* and *Corbett*. First, even under our forgiving pleading standard, Claims IV and V don't state a claim for relief under § 1983. Counts IV and V don't include allegations that track the elements of that claim or reference that statute.[23] While we construe the allegations in complaint in the light most favorable to a plaintiff, we cannot rewrite those allegations to save a claim from the claimant's failure to exhaust her administrative remedies. Second, Ms. Arbogast doesn't assert in her response brief that she has pleaded claims under § 1983; rather, she alludes to *Orr* and *Corbett* for the substantive law regarding First Amendment retaliation claims brought by public employees. Third, if Counts IV and V of the amended complaint are § 1983 claims, then how can Ms. Arbogast seek relief from the Board for the

> In a suit under 42 U.S.C. § 1983, where the plaintiff claims that he was discharged for exercising his First Amendment right of free speech, the burden is initially upon the plaintiff to show: (1) that his conduct was constitutionally protected; and (2) that his conduct was a substantial or motivating factor for his discharge. His employer may defeat the claim by showing that the same decision would have been reached even in the absence of the protected conduct.

Syl. Pt. 4, *Orr*, 173 W. Va. at 339, 315 S.E.2d at 597.

[23] *Cf. Hutchison v. City of Huntington*, 198 W. Va. 139, 151–52, 479 S.E.2d 649, 661–62 (1996) ("In order to recover damages under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.") (internal quotation omitted).

alleged retaliation perpetrated by Mr. Devono?[24]  Similarly, if Counts IV and V are § 1983 claims, may Mr. Devono now assert the defense of qualified immunity?[25]

At best, the majority has confused the line between two, distinct procedural vehicles for vindication of a discharged, public employee's First Amendment rights.  That is, it has blurred the line between a common law, wrongful discharge claim[26] and a claim under 42 U.S.C. § 1983.  At worst, it has given license to public employees to ignore the Legislature's clear direction that "grievances" like Ms. Arbogast's are subject to the authority of the Public Employees Grievance Board.

---

[24] *See Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 409 (E.D.N.Y. 2018) ("a municipality cannot be held liable under § 1983 on a respondeat superior theory" unless "the policies or customs it has sanctioned, led to an independent constitutional violation" or "inadequate training reflects deliberate indifference to constitutional rights") (internal quotations omitted).

[25] *See, e.g.*, *Brickey v. Hall*, 828 F.3d 298, 303 (4th Cir. 2016) ("Qualified immunity shields government officials from personal liability when their conduct does not violate clearly established rights of which a reasonable person would have known.") (cleaned up); *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (principal was qualifiedly immune from §1983 claim (First Amendment) where student had not pleaded a violation of a federal constitutional right); *see also Robinson v. Pack*, 223 W. Va. 828, 834, 679 S.E.2d 660, 666 (2009) ("federal law is controlling when public officials are sued in state court for violations of federal rights under 42 U.S.C. § 1983").

[26] *See Feliciano v. 7-Eleven, Inc.*, 210 W. Va. 740, 750, 559 S.E.2d 713, 723 (2001) (to determine whether an employee has "successfully presented a claim of relief for wrongful discharge in contravention of substantial public policy" court must consider whether "a clear public policy existed and was manifested in a state or *federal constitution*") (emphasis added).

Here is my bottom line:  Counts III, IV, and V of the amended complaint are common law, wrongful discharge claims in their purest form.  And, because they have been brought by Ms. Arbogast, an "employee"[27] against an "employer,"[28] and they satisfy the pivotal definition of "grievance," Ms. Arbogast had to seek "relief . . . from the [Public Employees Grievance Board" before running to circuit court.  She did not do that.  So, I repeat, Ms. Arbogast has failed to "satisfy the jurisdictional prerequisite to resort to the courts;"[29] the circuit court lacks jurisdiction over Counts III, IV, and V of the amended complaint; and the circuit court should have dismissed those claims under West Virginia Rule of Civil Procedure 12b)(1).

I am authorized to state that Justice Armstead joins in this separate opinion.

---

[27] *See* note 1, *supra.*

[28] *See* note 2, *supra.*

[29] *Daurelle*, 143 W. Va. at 674, 104 S.E.2d at 322.